970 So.2d 547 (2007)
Densic HAYES
v.
LOUISIANA STATE PENITENTIARY[1]
No. 2006 CA 0553.
Court of Appeal of Louisiana, First Circuit.
August 15, 2007.
Rehearing Denied October 22, 2007.
*551 Ted Williams, Williams & Miller, L.L.C., Baton Rouge, for Plaintiff-Appellee Densic Hayes.
Philip J. Shaheen, Baton Rouge, for Defendant-Appellant Louisiana State Penitentiary/Department Of Public Safety and Corrections.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
In this workers' compensation case, an employer appeals from a judgment in favor of its former employee, which judgment declared that an accident had occurred on or about January 20, 1997, and awarded the employee supplemental earnings benefits, medical benefits, penalties, attorney fees, legal interest, and costs. For the following reasons, we affirm.

Factual Background and Procedural History
Densic Hayes (Mr. Hayes) was employed by the Department of Public Safety and Corrections (Department)[2] as the food director at Louisiana State Penitentiary at Angola, Louisiana. On or about January 20, 1997, while in the course and scope of his employment, Mr. Hayes allegedly fell and injured his back while on a loading dock directing a supply truck that was backing up to the dock. Mr. Hayes testified that he informed his secretary, Dorothy Wilson, and others in the business office about the incident. An accident report was completed by Sharon Augustine, which indicated that he had injured himself when Mr. Hayes slipped off of the end of the porch/dock while lifting cases of food. The report, which was dated February 4, 1998, indicated that Ms. Augustine had been informed about the accident on February 4, 1997.
According to Mr. Hayes, he initially received treatment for his injury from physicians at the Veterans Administration Hospital (VA) in Baton Rouge and then from Dr. Trenton L. James. In November 1998, pursuant to a referral by Dr. James, Mr. Hayes presented himself to Baton Rouge General Medical Center (BRGMC) Physical Therapy for an initial evaluation, at which time he indicated that his symptoms arose six to seven months earlier when he was lifting a case of food in the freezer. Nonetheless, the BRGMC records reflected that the onset of his symptoms initially commenced following a 1997 fall on a loading dock. Based on a referral from Mr. Hayes' primary care physician, Mr. Hayes began seeking treatment on July 29, 1999, from Dr. Gray Wesley Barrow with the Rehabilitation Hospital of Baton Rouge, who was board certified in physical medicine and rehabilitation, at which time Mr. Hayes gave a history of low back pain since a fall at work in January 1997.
Dr. Barrow's diagnosis was left lumbar radiculopathy secondary to lumbar stenosis. *552 Subsequently, Mr. Hayes received three lumbar steroid injections, which gave him some relief. On December 22, 1999, Dr. Barrow took Mr. Hayes off work. In connection with this determination, the Department began paying workers' compensation indemnity benefits to Mr. Hayes for temporary total disability (TTD). As of August 30, 2000, Dr. Barrow felt that Mr. Hayes could function at a sedentary work capacity with very limited bending, squatting, twisting, pulling, and pushing.
Subsequently, the Department offered Mr. Hayes a desk job at the Department's headquarters within the sedentary restrictions designated by Dr. Barrow. Rather than accept this offer, Mr. Hayes decided to retire, effective May 12, 2001. The Department discontinued the payment of indemnity benefits in February 2001. As of March 13, 2001, Dr. Barrow believed that Mr. Hayes had reached maximum medical improvement.
On August 23, 2001, Mr. Hayes filed a disputed claim for compensation, alleging that he slipped off of a wet loading dock while directing a truck to the dock for unloading. The Department filed a motion for summary judgment, seeking to have the workers' compensation judge (WCJ) determine whether Mr. Hayes had violated LSA-R.S. 23:1208 by receiving workers' compensation benefits while earning an income from Dolphin's Used Tires (Dolphin's).[3] Following a hearing, the WCJ denied the Department's motion.
After a trial of this matter,[4] the WCJ declared that Mr. Hayes had suffered a work-related injury in an accident that occurred on or about January 20, 1997. Accordingly, the WCJ awarded supplemental earnings benefits (SEB) at the maximum rate from February 12, 2001, to March 26, 2001, and from March 26, 2002, until such time as the Department was able to establish Mr. Hayes' wage-earning capacity pursuant to the workers' compensation law.[5] The judgment also ordered payment of medical benefits. Penalties in the amount of $2,000 and attorney fees in the amount of $5,000 were also awarded, along with legal interest and all costs. Following the denial of its motion for new trial, the Department appealed, contending that the WCJ erred in the following respects:
1. failing to grant its motion for summary judgment;
2. failing to find that Mr. Hayes had committed fraud;
3. finding that Mr. Hayes had proven the occurrence of a work-related accident on January 20, 1997;
4. finding a causal relationship between the January 20, 1997 accident and his condition;
5. finding that the return-to-work program and employment offered by the Department did not meet the sedentary restrictions set by Mr. Hayes' physician;
6. failing to find that Mr. Hayes' entitlement to workers' compensation benefits was forfeited by his failure and refusal to return to work within his limitations, thereby taking himself out of the workforce; and
7. awarding SEB, penalties, and attorney fees.

*553 Willful False Statement/Failure to Report Earnings

By way of its assignment of error pertaining to the denial of its motion for summary judgment, the Department alleged Mr. Hayes had violated LSA-R.S. 23:1208. At the time of the alleged accident,[6] LSA-R.S. 23:1208 provided, in pertinent part:[7]
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by [the workers' compensation judge], forfeit any right to compensation benefits under this Chapter.
* * *
G. Whenever an employee receives benefits pursuant to this Chapter for more than thirty days, the employee shall report his other earnings to his employer's insurer quarterly on a form prescribed by the director.
H. (1) Whenever an employee fails to report to his employer's insurer as required by this Section within fourteen days of his receipt of the appropriate form, the employee's right to benefits as provided in this Chapter may be suspended. If otherwise eligible for benefits, the employee shall be entitled to all of the suspended benefits after the form has been provided to the insurer.
* * *
(3) The insurer may request a suspension of benefits or an assessment of a penalty for failure to report as provided in this Subsection by filing a form LDOL-WC-1008 with the director.
The Department argued that Mr. Hayes had committed fraud by signing a document stating he was in compliance with all the workers' compensation laws, although he had failed to comply with LSA-R.S. 23:1208(G), which required him to report any and all other earnings he received while receiving workers' compensation benefits. The Department introduced an "Employee Certification Form" that had been signed by Mr. Hayes, certifying that he was in compliance with the workers' compensation law. The Department maintained that when its insurer provided Mr. Hayes with that form, he was provided with an "Employee Certificate of Compliance" form and an "Employee's Monthly Report of Earnings,"[8] neither of which had been signed by Mr. Hayes. Roosevelt Smith, state risk claims adjuster with the Office of Risk Management, averred in an affidavit that these two documents were generally included in the package of documents routinely sent to workers' *554 compensation claimants like Mr. Hayes. The Department maintained that Mr. Hayes had deliberately ignored his duty to report his earnings from Dolphin's to his employer's insurer, and as a result of this willful misrepresentation, Mr. Hayes had forfeited his entitlement to all of his workers' compensation benefits, relying on St. Bernard Parish Police Jury v. Duplessis, 02-0632 (La.12/4/02), 831 So.2d 955.
Mr. Hayes maintained that his failure to report was not the result of fraudulent conduct or any attempt to hide his operation of Dolphin's. Mr. Hayes stated that he had told his supervisors with the Department that he owned Dolphin's. He also alleged that he had never paid himself a salary or wages, and that the business operated at a loss. His income tax statements showed that he reported a net loss on Dolphin's throughout the time at issue. Because of this, Mr. Hayes argued he did not believe he had any earnings to report. Accordingly, there was no showing that Mr. Hayes made any willful misrepresentation or false statement in order to obtain workers' compensation benefits resulting in a violation of LSA-R.S. 23:1208(G).
We also find that the Department's reliance on the Duplessis case is misplaced, since that case involved a claimant's willful misrepresentation regarding mileage reimbursement, which subjected him to the forfeiture of his workers' compensation benefits. The Department's allegations in the matter before us did not establish a willful misrepresentation that could subject Mr. Hayes to the penalties provided by LSA-R.S. 23:1208(E). Rather, this case deals with the failure to comply with statutory reporting requirements described in LSA-R.S. 23:1208(G).
Mr. Hayes testified that he did not recall receiving the additional two forms from Mr. Smith, nor had Mr. Smith or anyone else told him that if he were earning money or was self-employed, he was required to complete such a form. Based on this evidence, we find that the WCJ's rejection of the Department's defense, relating to violations of LSA-R.S. 23:1208(A) or (G), is reasonably supported by the record and is not manifestly erroneous.[9]
Furthermore, the penalty for violating LSA-R.S. 23:1208(G) is governed by LSA-R.S. 23:1208(H)(1), which merely allows the suspension of benefits until the report has been provided to the insurer. Even if we assumed for the sake of argument that the Department's insurer sent all of the necessary forms to Mr. Hayes, there is no proof in the record that its insurer filed a form LDOL-WC-1008 with the director, requesting a suspension of benefits or an assessment of a penalty, as required by LSA-R.S. 23:1208(H)(3). In the absence of such proof, the Department did not show that a suspension of benefits or an assessment of a penalty as provided by LSA-R.S. 23:1208(H)(1) was appropriate.

Occurrence of an Accident
The Department argued that there was insufficient evidence of an "accident" occurring on January 20, 1997, in that Mr. Hayes' testimony alone was insufficient to sustain his burden of proof. The claimant in a workers' compensation action has the burden of establishing a work-related *555 accident by a preponderance of the evidence. Bruno v. Harbert Int'l Inc., 593 So.2d 357, 361 (La.1992). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt on the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends. Corroboration may also be provided by medical evidence. Id.
In determining whether the worker has discharged his burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." Id. The WCJ's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations, which are not to be disturbed on review unless clearly wrong or manifestly erroneous. Id.
The Department faults Mr. Hayes for failing to produce any witness to the accident or medical evidence that would show a causal connection between his alleged accident and injury. Specifically, it contends that the first evidence of medical treatment concerning his condition pertained to treatment received on November 16, 1998, with a history of a back injury having occurred six months earlier while lifting a box of ribs. The Department maintained that although Mr. Hayes testified that he had received prior treatment, no supporting evidence was offered. Additionally, the Department noted that the doctor on whose testimony the WCJ relied first treated Mr. Hayes in July 1999, and that doctor's opinion was based on the history given by Mr. Hayes.
Mr. Hayes' testimony established that he had worked with the Department since 1977. He had received numerous commendations and praise for his job performance. Prior to that time, Mr. Hayes had served in the armed forces for 21 years. At the time of the alleged accident, he was employed as the director of food services at Angola. His position was that of a working supervisor, in that he was required to perform many duties involving physical labor, including unloading trucks. He stated that on January 20, 1997, he slipped and fell on a slick loading ramp while directing an 18-wheeler that was backing in to unload. As a result of this incident, Mr. Hayes injured his back. He informed his secretary, Ms. Wilson, about the incident as soon as he returned to his office. When she told him that he should get it checked out, he replied that he wanted to wait and see how he would feel. The following morning, he was a little sore. By the third morning following the incident, he was experiencing a lot of pain, which had begun to go down his leg, and the muscles in his back had tightened up. He testified that he sought medical treatment at that time from the VA, while continuing to work in pain. According to Mr. Hayes, he reported the accident to Ms. Augustine several days after its occurrence. Mr. Hayes stated that he began receiving treatment from Dr. James when he obtained permission to see any doctor of his choice from someone working on his workers' compensation claim.
The employer's first report of injury was prepared by Ms. Augustine. This report, dated February 4, 1998,[10] disclosed *556 that the Department knew of his injury on February 4, 1997. According to the report, Mr. Hayes injured his lower back on January 20, 1997, when he slipped off the end of the porch/dock while changing out food items (cases of ribs) in the cold storage area. At that time, Mr. Hayes also reported to Ms. Augustine that he had received treatment at the "Veteran Affairs Clinic" and "Baton Rouge General Hospital."
In light of this evidence, we conclude that the WCJ's determination that Mr. Hayes' testimony was credible and its finding of the occurrence of an accident on January 20, 1997, are reasonably supported by the record and are not manifestly erroneous.

Causation
The Department challenged the WCJ's finding that Mr. Hayes had shown a causal relationship between the January 20, 1997 accident and his condition. This alleged failure of proof is based on the presence of a preexisting back condition and the length of time between the accident and the treatment rendered by Dr. Barrow and others for which medical records were introduced at the trial.
An otherwise healthy employee with a preexisting condition is entitled to benefits if he can prove that his work contributed to, aggravated, or accelerated his injury. Dyson v. State Employees Group Benefits Program, 610 So.2d 953, 955 (La.App. 1st Cir.1992). An employee's work-related accident is presumed to have caused his disability when the claimant proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition. Walker v. Halliburton Services, Inc., 93-722 (La.App. 3rd Cir.3/1/95), 654 So.2d 365, 369, writ denied, 95-1507 (La.9/22/95), 660 So.2d 481.
Dr. James was not called as a witness at the trial of this matter and his medical records were not directly offered into evidence. However, excerpts of the medical records dating back to August 17, 1998, of Dr. James and other physicians working with him[11] who treated Mr. Hayes, are included in the business or medical records of other treating physicians, which were introduced into evidence. From this information, we can discern that Dr. R.P. St. Amant saw Mr. Hayes on August 17, 1998, for pain that had begun four or five days earlier in Mr. Hayes' left buttock, radiating down the left leg to the top of his foot. Dr. St. Amant's notes reflect that Mr. Hayes related his condition to an on-the-job injury that had occurred in January 1998. These notes further indicate that Mr. Hayes had a history of back problems before this injury. Dr. James' notes from a visit on August 26, 1998, disclosed a history of similar problems for which Mr. Hayes had received treatment from the VA. Dr. James' diagnosis was probable degenerative disc with nerve root irritation, causing sciatica in the left lower extremity. Mr. Hayes was referred by Dr. *557 James to BRGMC Physical Therapy, where he was initially evaluated on November 16, 1998. The records from this visit disclosed an onset of Mr. Hayes' condition in November 1997; however, the records further state that Mr. Hayes indicated the initial onset occurred when he slipped off a dock and hit his back. According to the records, Mr. Hayes reported that he began experiencing additional symptoms about six or seven months prior to the evaluation, when he was lifting up on a case in the freezer at work.
Mr. Hayes explained that with the treatment being rendered by Dr. James, he got to the point where he was feeling pretty good, but always in some constant pain; then all of a sudden (several months after the accident), he began to hurt really badly. Mr. Hayes testified that Dr. James eventually referred him to Dr. Barrow.
Dr. Barrow stated that an August 5, 1999 MRI revealed a disk bulge at the L3-4 and L4-5 levels, producing moderate, bilateral foraminal stenosis. Dr. Barrow testified that stenosis can result from a chronic condition rather than a precipitating event. Dr. Barrow's diagnosis was left lumbar radiculopathy secondary to lumbar stenosis. Subsequently, Mr. Hayes received three lumbar steroid injections. As of September 22, 1999, Mr. Hayes was tolerating his work fairly well. On December 22, 1999, Mr. Hayes reported to Dr. Barrow that he had not worked since Thanksgiving; as of that date, Dr. Barrow took Mr. Hayes off work.[12] In connection with this determination, the Department began paying workers' compensation indemnity benefits to Mr. Hayes. As of August 30, 2000, Dr. Barrow felt that Mr. Hayes could function at a sedentary work capacity with very limited bending, squatting, twisting, pulling, and pushing. Dr. Barrow explained that he would expect Mr. Hayes to experience a flare-up when doing anything outside of this restriction. On October 9, 2000, Dr. Barrow noted that driving increased Mr. Hayes' symptoms; therefore, Mr. Hayes' driving time was restricted by Dr. Barrow to 30 minutes.
Dr. Barrow recognized that Mr. Hayes' stenosis could have resulted from a chronic condition and probably pre-dated his January 1997 accident. According to Dr. Barrow, it is not uncommon for an asymptomatic lumbar stenosis to become symptomatic after an injury or trauma. In Dr. Barrow's opinion, the type of accident described by Mr. Hayes would be sufficient to make an asymptomatic stenosis become symptomatic. In light of the history related by Mr. Hayes, Dr. Barrow opined that the January 1997 trauma caused his condition to become symptomatic. Dr. Barrow believed that a causal relationship existed between the work-related accident and Mr. Hayes' condition, because his lower back condition was asymptomatic prior to the accident, and since the accident, Mr. Hayes had consistently complained of low back problems.
Although his statements to medical personnel as to the date of the accident have not always been accurate, Mr. Hayes' report of the underlying cause of his current condition has remained the same that is, a fall on the dock. Granted, it may have been helpful in determining causation to have had the benefit of the testimony of a coworker, family member, or the doctors who treated Mr. Hayes prior to Dr. Barrow, and/or records from the Veteran's Administration facilities. Nonetheless, the WCJ obviously found Mr. Hayes' testimony with respect to the initial injury and his eventual disability to be credible. Such *558 facts were corroborated by the accident report prepared by Ms. Augustine, as well as the history repeatedly given to medical personnel following the accident, which served as the basis of Dr. Barrow's opinion regarding causation. Outside of the fact that Mr. Hayes may have had a preexisting back condition with which he had been able to perform the duties of his job, no other evidence was offered that discredited or cast serious doubt on Mr. Hayes' version of the incident and the resulting injury. Therefore, we conclude that the record provides reasonable support for the WCJ's finding that a causal connection between the accident and the disabling condition was shown in this case, and we further conclude the record does not support a finding of manifest error.

Entitlement to SEB
An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a). The employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Magee v. Abek, Inc., 04-2554 (La.App. 1st Cir.4/28/06), 934 So.2d 800, 807-08, writ denied, 06-1876 (La.10/27/06), 939 So.2d 1287. Once the employee meets this burden, the burden of proof shifts to the employer, who, in order to defeat the employee's claim for SEB or to establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic area. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556.
The record is clear that Mr. Hayes was capable of some type of gainful employment. However, there is conflicting evidence as to the exact level at which Mr. Hayes was capable of working. On August 30, 2000, Mr. Hayes' treating physician opined that Mr. Hayes was only capable of functioning at a sedentary work capacity with very limited bending, squatting, twisting, pulling, and pushing. Dr. Barrow indicated that Mr. Hayes was unable to drive more than 30 minutes at a time. However, the results of a functional capacity evaluation (FCE) that had been performed on February 1, 2001, at Dr. Barrow's recommendation, showed that Mr. Hayes was capable of light physical demand, even as high as light to medium. The results of this evaluation indicated that Mr. Hayes could sit between 30 to 60 minutes and could lift up to 35 pounds to waist height. Based on the fact that Mr. Hayes had given maximum effort during the FCE and had suffered a significant flare-up of his right buttock pain and right lateral thigh pain to the knee after that evaluation, Dr. Barrow maintained his position that Mr. Hayes should not do anything greater than sedentary duty. This restriction was found by Dr. Barrow to be of a permanent nature.
The Department asserted that the WCJ erred in finding that the return-to-work program and employment offered by the Department did not meet the sedentary restrictions set by Mr. Hayes' physician. This assignment of error lacks merit, in that the WCJ found that the Department had shown that Mr. Hayes had been offered suitable employment within the Department. For that reason, the WCJ concluded that Mr. Hayes' entitlement to indemnity benefits ceased on March 26, 2001, the point at which a transitional job *559 within the restrictions set by Dr. Barrow was shown to have been available to Mr. Hayes.[13] However, based on the evidence presented, the WCJ found that the Department had shown that the job was only of a temporary or transitional nature. Lee Jennings, the Deputy Undersecretary over the Office of Management and Finance, stated that the Department's policy had been implemented to provide temporary relief for workers to afford them the opportunity to transition back into their regular jobs or some other type of employment. Mr. Hayes was a capable employee with a long record of state service as an administrator dealing with a large number of employees and inmates. In light of his knowledge and experience, Mr. Hayes was eligible for placement at the Department's headquarters. However, Mr. Jennings was clear that this assignment would be of a temporary nature, and that if Mr. Hayes' restrictions were permanent, the Department would be unable to accommodate him beyond a maximum of one year. This evidence provides reasonable support for the WCJ's decision that the transitional job was for a period of one year. Based on this finding, Mr. Hayes was not allowed to recover SEB for the period of March 26, 2001, to March 26, 2002.[14]
As to his entitlement to indemnity benefits from that point forward, the Department contended that Mr. Hayes should have been barred from receiving SEB, based on the fact that his retirement precluded his return to work. At the time of the accident in question, the right to SEB pursuant to LSA-R.S. 23:1221(3) could in no event exceed a maximum of five hundred twenty weeks, and was to terminate when the employee retired or began to receive old age insurance benefits under Title II of the Social Security Act, whichever came first; however, the period during which SEB could be payable was not to be less than one hundred four weeks. LSA-R.S. 23:1221(3)(d)(iii).[15] In Pierce v. Lafourche Parish Council, 99-2854 (La.5/16/00), 762 So.2d 608, 614, the termination condition based on receipt of old age insurance benefits was found to unconstitutionally discriminate against employees over the age of 62 on the basis of age. In Allen v. City of Shreveport, 93-2928 (La.5/23/94), 637 So.2d 123, 126-27, the court concluded that an employee retires for purposes of LSA-R.S. 23:1221(3)(d)(iii) when the employee withdraws from the work force. Thus, we must determine if Mr. Hayes had retired within the meaning of LSA-R.S. 23:1221(3)(d)(iii).
Mr. Hayes was unable to return to his previous job due to the work-related injury he had sustained. Based on his age and the number of years in state service, Mr. Hayes was eligible to retire. Because of his back condition, Mr. Hayes elected to retire effective May 12, 2001. Following his retirement, he continued to operate *560 Dolphin's. This does not, however, equate to retirement under LSA-R.S. 23:1221(3)(d)(iii). His election to take benefits to which he was entitled under the state's retirement plan based on his years of service did not deprive him of any other benefits that the state was obligated to provide under workers' compensation law, unless it had been established that he had actually retired, i.e., withdrawn from the work force with no intention of returning. See Tynes v. Gaylord Container Corp., 02-0519 (La.App. 1st Cir.2/14/03), 844 So.2d 80, 88-89, writ denied, 03-0769 (La.5/9/03), 843 So.2d 404. Mr. Hayes' self-employment in the used tire business was sufficient to rebut any argument that he had removed himself from the work force. Therefore, as there is no evidence of Mr. Hayes' intention to permanently withdraw from the work force, we conclude that the provisions of LSA-R.S. 23:1221(3)(d)(iii) are inapplicable.
Alternatively, the Department seeks to have this court recognize its entitlement to a credit, in light of income received by Mr. Hayes from his military retirement, social security benefits, and state retirement. Although this issue was raised by the Department in its first supplemental and amending answer and reconventional demand that was filed on July 12, 2004, it was not addressed by the WCJ. Generally, when a judgment is silent as to a claim or demand placed before the court, it is presumed that the court denied the relief sought. Barham & Arceneaux v. Kozak, 02-2325 (La.App. 1st Cir.3/12/04), 874 So.2d 228, 241, writ denied, 04-0930 (La.6/4/04), 876 So.2d 87.
The record reveals that Mr. Hayes began receiving benefits under his state retirement plan in the amount of $1,100 per month when he retired on May 12, 2001. Since 1974, he had been receiving $1,400 per month in military retirement, and when he turned 62 on August 26, 1999, he began receiving $500 per month in Social Security old age benefits.
Louisiana Revised Statute 23:1225(A) provides that workers' compensation benefits for injuries producing permanent total disability shall be reduced when the person is receiving Social Security disability benefits. Section 1225(A) is a wage-loss benefit coordination statute enacted specifically to coordinate Louisiana workers' compensation benefits and federal Social Security disability benefits in cases of permanent total disability. Al Johnson Const. Co. v. Pitre, 98-2564 (La.5/18/99), 734 So.2d 623, 625. In the present case, the award to Mr. Hayes was for SEB and was not based on a finding of a permanent total disability. Furthermore, the record is devoid of any evidence that Mr. Hayes was receiving federal Social Security disability benefits. Therefore, LSA-R.S. 23:1225(A) is not applicable in this case.
At the time of Mr. Hayes' accident, an offset was mandated by LSA-R.S. 23:1225(C)(1), which, in part, provided:[16]
If an employee receives remuneration from:
(a) Benefits under the Louisiana Workers' Compensation Law.
(b) Old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other workers' compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is *561 an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage.
This subparagraph, which authorizes a reduction of the workers' compensation obligation when the employee receives other enumerated benefits, is a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. Cousins v. City of New Orleans, 608 So.2d 978, 981 (La.1992). An employer seeking credit for benefits covered by the statute has the burden of proving both entitlement to and the amount of the credit. Jones v. General Motors Corp., 03-1766 (La.6/25/04), 871 So.2d 1109, 1117.
In 1978, the Louisiana Legislature enacted LSA-R.S. 23:1225 to provide for reduction of state workers' compensation benefits when the employee also receives federal Social Security benefits. The legislation took advantage of a federal statute that permitted a reduction in state compensation payments, which, when combined with the federal payments, would amount to more than the federal maximum. A reduction of the burden on the state compensation system was thereby accomplished. In 1983, the legislature added paragraph C, which provided for a reduction of workers' compensation benefits by limiting the combined remuneration from workers' compensation, old age insurance benefits under Social Security, benefits under disability benefit plans, and other workers' compensation benefits, to two-thirds of wages. Cousins, 608 So.2d at 980.
The coordination of wage loss benefits in the overall system of workers' compensation seeks to assure that the employee receives some degree of recovery for lost wages, while precluding the employee from recovering duplicative benefits under different parts of the system that could exceed the actual wages earned prior to the disability. See Al Johnson Const. Co., 734 So.2d at 625-26. The theory is that an employee experiencing only one wage loss should be entitled to receive only one wage loss benefit from the employer. Garrett v. Seventh Ward Gen. Hosp., 95-0017 (La.9/22/95), 660 So.2d 841, 843. However, as recognized by the supreme court in Wal-Mart v. Keel, 01-3013 (La.4/3/02), 817 So.2d 1, there is an important distinction for purposes of LSA-R.S. 23:1225(C)(1)(b) between old age benefits and benefits intended to replace wages lost as the result of injury:
While we agree that preventing duplication of benefits is a legitimate state goal, we are convinced that La.Rev.Stat. 23:1225(C)(1)(b) does not meet even the minimum test of bearing a rational relationship to that goal for the following reasons.
Workers' compensation benefits are paid from insurance provided by employers to compensate employees for loss of income resulting from work-related injuries in exchange for their employees' forbearance from suing the employers in tort. Temporary total disability benefits replace a portion of the salary an injured employee could have earned had he not been injured. La.Rev.Stat. 23:1221(1)(a).
Social Security old age benefits, on the other hand, are not intended to replace wages lost solely by an employee's inability to work. They are provided to persons over the statutory age regardless of injury. Unlike disability benefits or unemployment benefits, a person may receive Social Security old age benefits *562 while still employed and earning additional income. Indeed, those age 70 and older, such as plaintiff, may earn unlimited amounts without any offset against their Social Security income.
Social Security old age benefits are not disability benefits, but old age entitlements serving the same function as pension payments. We point out that other forms of employer-paid retirement income based on tenure cannot be deducted from or "coordinated" with benefits received under the workers' compensation system. Cousins v. City of New Orleans, 608 So.2d 978 (La.1993) (holding that workers' compensation benefits could not be offset under La.Rev.Stat. 23:1225(C)(1)(c) when the firefighter was eligible for tenure-based retirement benefits under the same plan that provided disability benefits); see also Matthews v. City of Alexandria, 619 So.2d 57 (La. 1993).
Keel, 817 So.2d at 9-10. Therefore, the court in Keel reiterated that subparagraph (C)(1)(b) of the statute was unconstitutional. Keel, 817 So.2d at 10; see Pierce, 762 So.2d at 614. Accordingly, the Department's claim for an offset for the amount received monthly in federal Social Security old age benefits is without merit.
Moreover, there is no evidence that Mr. Hayes was receiving disability benefits from an employer-funded disability benefit plan or any other workers' compensation benefit. Therefore, the Department failed to prove its entitlement to a credit pursuant to LSA-R.S. 23:1225(C)(1)(c) or (d).
As to the Department's assertion that Mr. Hayes committed fraud by claiming to be disabled, when in fact he was observed performing physical work at his tire shop, we note that Mr. Hayes testified that he did very little work on his daily visits to the shop. Dolphin's work was performed by its employees, but Mr. Hayes admitted that he occasionally did things while at Dolphin's that made his back worse. The Department relied on the testimony of an investigator, who indicated that Mr. Hayes was doing more than sedentary-type work at the tire place. Specifically, he said he observed Mr. Hayes using a hydraulic jack one time, rolling a tire across the floor one day, and rolling a wheeled toolbox on another day. However, neither of the latter two observations were in the investigator's written report, and he admitted that the difference between the outside light and the inside darkness of the shop made it difficult to see and impossible to videotape or photograph the work activities. Given the obvious credibility assessments made by the WCJ with regard to Mr. Hayes' and the investigator's testimony on this issue, we are unable to conclude that the WCJ erred in failing to reduce or eliminate the SEB to which Mr. Hayes was entitled.

Penalties and Attorney Fees
At the time of Mr. Hayes' accident, the applicable statutory authority for assessing an employer with penalties and attorney fees depended on whether the employer had failed to commence the payment of benefits in a timely fashion or had discontinued benefits that had been timely paid. See Russell v. Snelling Personnel, 02-1347 (La.App. 1st Cir.5/9/03), 849 So.2d 588, 591. Penalties and attorney fees were recoverable under LSA-R.S. 23:1201(F) if the employer or insurer failed to commence payment of benefits timely or failed to pay continued installments of indemnity benefits or medical benefits timely, unless the claim was reasonably controverted.[17] *563 Attorney fees, but not penalties, were recoverable under LSA-R.S. 23:1201.2 if the employer or insurer arbitrarily and capriciously discontinued payment of benefits due.[18]Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 44. These statutes provided for the imposition of penalties and attorney fees to discourage indifference and undesirable conduct by employers and insurers and were essentially penal in nature. Although the workers' compensation law is to be liberally construed with regard to benefits, penal statutes are to be strictly construed. Cooper v. St. Tammany Parish School Board, 02-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, 04-0434 (La.4/23/04), 870 So.2d 300. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court's finding shall not be disturbed absent manifest error. Authement v. Shappert Eng'g, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188. The crucial inquiry in making this determination is whether the employer had an objective reason to deny benefits. Id.
The Department submitted that it terminated the TTD benefits in February 2001 with the week ending January 12, 2001, as a result of Mr. Hayes being observed doing physical work at his tire business at a time when he had declared that he was unable to lift anything, and as a result of his failure to report the earnings that he had been receiving from the tire business. Accordingly, the Department urged that its termination of TTD benefits was not arbitrary and capricious and the award of penalties and attorney fees was improper.[19] In making this argument, the Department overlooks the basis cited by the WCJ for making such awards. The WCJ's decision to award penalties and attorney fees was based on the Department's failure to initiate SEB payments at two particular times: (1) after the February 12, 2001 release to sedentary-type work by Dr. Barrow, and (2) after what would have been the expiration of the transitional job made available to him, March 26, 2002.
Since this case involves a failure to pay benefits by the Department, the applicable provision is LSA-R.S. 23:1201(F), as it existed prior to the 2003 amendment, which required that the claim be reasonably controverted in order to avoid penalties and attorney fees. To reasonably controvert a claim, the employer or its insurer must have had some valid reason or evidence upon which to base its denial of benefits. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. To determine whether the employee's right to benefits had been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under LSA-R.S. 23:1201(F), a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the employee throughout the time it refused to pay all or part of the benefits allegedly owed. Id. Therefore, the issue is whether the Department had any legal or factual basis for refusing to reinstate medical and indemnity benefits upon receipt of evidence *564 from Mr. Hayes' treating physician that he was only capable of sedentary work, which he could probably not do fulltime, and later, upon what would have been the expiration of the temporary job at Department headquarters, when Dr. Barrow had indicated his condition was permanent. Considering the evidence presented, we conclude that the WCJ did not manifestly err in finding that the Department had no objective reasons to deny benefits that would have enabled it to reasonably controvert Mr. Hayes' right to benefits in this case.

Decree
For the foregoing reasons, the judgment of the Office of Workers' Compensation Administration is affirmed. All costs of this appeal in the amount of $246.69 are assessed to the Department of Public Safety and Corrections.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs, and assigns reasons.
I respectfully concur. Based on the numerous credibility determinations herein, I cannot say that the WCJ erred, and, therefore, am bound to concur in the result.
NOTES
[1] The defendant was initially identified as "Angola State Penitentiary."
[2] The Department is the proper party defendant. See LSA-R.S. 36:401(A) and (B)(4).
[3] In 1998, Mr. Hayes bought Dolphin's Used Tires, which he operated through employees. His affidavit alleged he had derived no income from the business, nor had he paid himself any wages or salary.
[4] At the trial, the parties stipulated that Mr. Hayes' claim for temporary total disability benefits had prescribed.
[5] The judgment declared that Mr. Hayes was not entitled to SEB from March 26, 2001, to March 26, 2002.
[6] Section 1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits; therefore, the statute generally becomes applicable at the time of an employee's accident or claim. Newman v. Richard Price Const., 02-0995 (La.App. 1st Cir.8/8/03), 859 So.2d 136, 140, citing Resweber v. Haroil Constr. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 14.
[7] Section 1208 was subsequently amended by 1997 La. Acts, No. 90, § 1; by 1997 La. Acts, No. 394, § 1; by 1997 La. Acts, No. 1108, § 1; by 2003 La. Acts, No. 702, § 1; and by 2005 La. Acts, No. 257, § 1.
[8] Copies of these unsigned forms, along with Mr. Hayes' income tax statements for 1999 through 2004, were in the record.
[9] The Department raised the issue of Mr. Hayes' violation of LSA-R.S. 23:1208(G) via a motion for summary judgment, and it reurged this defense in a subsequent supplemental answer and reconventional demand. Nonetheless, the WCJ did not address this specific issue in its judgment. Silence in a judgment on any issue that has been placed before the court is deemed a rejection of the claim. Wood v. Brian Harris Autoplex, 04-1316 (La.App. 1st Cir.8/3/05), 923 So.2d 17, 22 n. 3.
[10] According to Mr. Hayes, he reported the incident to Ms. Augustine several days after the injury, but she did not complete an accident report until February 4, 1998. The Department acknowledged that the report date may have been a typographical error, in light of the fact that she admittedly had been informed about the accident on February 4, 1997. The report also is stamped "entered Feb 8, 1997," further emphasizing the erroneous report completion date.
[11] Evidence in the record reveals that Dr. James, Dr. R.P. St. Amant, and Dr. David R. Carver were all employed with the Baton Rouge Family Medical Center.
[12] Mr. Hayes testified that he was twice (in October 1999 and May 2000) placed on family medical leave by the Department after his accident because of his back.
[13] Although Mr. Hayes takes issue with this finding in his brief, he failed to file a motion for appeal or an answer to the Department's appeal; therefore, the WCJ's finding that Mr. Hayes was not entitled to SEB for the period of March 26, 2001, to March 26, 2002, is not properly before this court on appeal. See LSA-C.C.P. art. 2133.
[14] Therefore, we find it unnecessary under the facts of this case to determine whether Davis v. Cippriani's Italian Restaurant, 02-1144 (La.App. 1st Cir.2/14/03), 844 So.2d 58, writ denied, 03-0753 (La.5/9/03), 843 So.2d 403, required Dr. Barrow's written approval of this available job.
[15] LSA-R.S. 23:1221(3)(d)(iii) was amended by 2001 La. Acts, No. 1014, § 1, and 2001 La. Acts, No. 1070, § 1, to eliminate the reference to "old age insurance benefits under Title II of the Social Security Act." The amendments were identical.
[16] Subparagraph (C)(1)(b) was repealed by 2003 La. Acts, No. 616, § 1.
[17] LSA-R.S. 23:1201(F) has since been amended by 2003 La. Acts, No. 1204, § 1, effective August 15, 2003.
[18] LSA-R.S. 23:1201.2 was repealed by 2003 La. Acts, No. 1204, § 2, effective August 15, 2003. The substance of former LSA-R.S. 23:1201.2 is now addressed in LSA-R.S. 23:1201(I).
[19] This argument also conflicts with the investigator's testimony and report, which indicated he placed Mr. Hayes under surveillance from March 1, 2001, through March 13, 2001. Obviously, the investigator's observations occurred after the Department had terminated benefits.