PARRO, J.
 

 |2In this workers’ compensation case, Pala Group, LLC (Pala) and its insurer, Zurich Insurance Company (Zurich), appeal an award of benefits to Michael De-latte. Delatte answered the appeal, seeking additional temporary total disability benefits, as well as attorney fees, penalties, and all costs in the workers’ compensation
 
 *294
 
 court and in this appeal. For the following reasons, we amend the judgment and affirm as amended.
 

 BACKGROUND
 

 Delatte was employed as a pipefitter by Pala, and on December 6, 2006, he suffered a back injury at work while trying to open a large valve. An accident report was completed, and Pala sent him to see a doctor that day and for a follow-up visit a week later. Both times, the doctor performed a brief examination and released him to return to work “as tolerated.” He continued to work for Pala until January 15, 2007, when he was laid off due to a reduction in force. On January 16, he was hired by Jacobs Field Services North America, Inc. (Jacobs) as a pipefitter to work at ExxonMobil. Delatte passed a physical before beginning the job at Jacobs, and when filling out the required paperwork, Delatte responded “N/A” as to the date of injury and reported he was not taking any medications. He mentioned a prior back surgery in 1994, but stated there had been no problems since then. On a second-injury-fund questionnaire through Jacobs, Delatte did not list any injury occurring during his employment with Pala.
 

 Delatte continued working with Jacobs until he was hired by DMI on February 19, 2007. DMI’s employment records are consistent with those of Jacobs, with De-latte mentioning the 1994 injury and no mention of an injury occurring at Pala. He also marked “No” as to any condition or injury that might impair or limit his ability to work. Delatte was still working for DMI on Thursday, March 15, 2007, was off the next three days, and on Monday, March 19, 2007, went to see a chiropractor, where he stated on a form that the visit 13was not related to an auto-related or work-related injury. The chiropractor sent him to the St. Elizabeth Hospital emergency room, where he reported right hip pain starting two days earlier and moving into the right thigh. The chiropractor then recommended that Delatte obtain an MRI and consult with a neurosurgeon, and he began seeing Dr. Luke Corsten. An MRI in March 2007 showed a disc herniation at L4-L5, which Dr. Corsten stated was causally connected to Delatte’s employment injury at Pala. He recommended various treatments, but Delatte could not afford to pay for further treatments, and none were approved by Pala. Pala did not send Delatte to a physician of its choice to obtain a second opinion and refused to pay any medical bills or benefits. On June 27, 2007, Delatte filed this disputed claim for compensation.
 

 The workers’ compensation judge (WCJ) concluded after a trial that Delatte had a herniated disc and a pinched nerve as a result of the accident at Pala on December 6, 2006, and ordered that payment of benefits be based on a workers’ compensation rate of $478, an average weekly wage of $844.58, and an average monthly wage of $3,659.85. She ordered temporary total disability benefits from May 3, 2007, through September 23, 2007, and supplemental earnings benefits from September 24, 2007, through the present and continuing. The WO also declared that Delatte was entitled to all reasonable and necessary medical treatment related to his back condition, and ordered Pala to pay for all past medical treatment and out-of-pocket expenses incurred by Delatte from December 6, 2006, subject to any credits. The WCJ found Pala had reasonably controverted the claim, and did not award penalties or attorney fees; each party was responsible for its own costs.
 

 In reasons for judgment, the WCJ stated she was highly persuaded by Dr. Cor-sten’s deposition testimony. She also not
 
 *295
 
 ed that the time between the accident at Pala and the worsening back pain was only three months, that a coemployee testified that Delatte had self-limited his work activities during that period, that there was no intervening cause for the condition, and that she 14accepted his testimony as credible.
 

 In this appeal, Pala argues that Delatte failed to establish a causal relationship between the accident that occurred in the course and scope of his employment with Pala in December 2006 and the injury for which he is seeking benefits. Delatte contends additional total temporary disability benefits should have been awarded from March 19, 2007, through May 2, 2007, and that Pala did not have information upon which to reasonably controvert his claim for benefits and medical treatment when that claim was made. Therefore, he seeks attorney fees, penalties, and all costs.
 

 BURDEN OF PROOF/CAUSATION
 

 A workers’ compensation claimant bears the burden of establishing a causal connection between the work accident and the resulting disability by a preponderance of the evidence.
 
 Clark v. Godfrey Knight Farms. Inc.,
 
 08-1723 (La.App. 1st Cir.2/13/09), 6 So.3d 284, 292,
 
 writ denied,
 
 09-0562 (La.5/29/09), 9 So.3d 163. An employee’s work-related accident is presumed to have caused his disability when the claimant proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition.
 
 Hayes v. Louisiana State Penitentiary,
 
 06-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 556,
 
 writ denied,
 
 07-2258 (La.1/25/08), 973 So.2d 758.
 

 In determining whether the worker has discharged his burden of proof, the WCJ should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.”
 
 Hayes,
 
 970 So.2d at 555. The WCJ’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations, which are not to be disturbed on review unless clearly wrong or manifestly erroneous.
 
 Id.
 

 | sThe record includes testimony from Delatte and co-worker Patrick Banks, the deposition of Dr. Corsten, Delatte’s medical records, and his employment records with Pala, Jacobs, and DMI. Delatte testified that he and an operator at the Motiva plant were trying to open a stuck 24-inch valve, using a hydraulic machine and a large lever. After pulling on the lever several times, Delatte said he felt a “twitch” in his lower back. He asked Banks to assist the operator, and reported the injury to the safety manager at the plant.
 

 Delatte completed an accident report, after which the safety manager sent him to Dr. Stephen Holmes at Ascension Medical Clinic. Dr. Holmes examined him by having him bend over, stoop down, and perform similar movements, which Delatte said he was able to accomplish, but in pain. Dr. Holmes sent him back to work on light duty. He returned to Dr. Holmes on December 14, 2006. At that visit, Dr. Holmes said Delatte’s back was sprained and released him to full duty work. Delatte stated that after the accident, he had constant pain in his back while he worked and did not do any heavy-duty work at all. Delatte testified that Pala knew he was limiting his activities and allowed him to
 
 *296
 
 do so. However, on January 15, he was laid off due to a reduction in force.
 

 The next day, Jacobs hired him to work as a pipefitter at ExxonMobil in Baton Rouge. Delatte said he was able to avoid any heavy lifting, because there were several people in the crew, including Banks, and he let them do the heavy work. After about three weeks, he applied for a job with DMI in order to get assigned to a location closer to his home in Ascension Parish. DMI hired him as a pipefitter and sent him back to the Motiva plant. De-latte stated he did not have to do any pipefitting duties there, because the employer was waiting for some pipe to come in. He helped the carpenters by doing things such as holding stakes for them to shoot grades, handing them tools, helping them measure, or holding chalk lines.
 

 Delatte admitted that he gave a medical statement to each of his [ (¡subsequent employers and did not admit the December 2006 accident on any of the documents he completed for Jacobs or DMI. He explained that if he had done so, he would not have gotten a job, and he needed the money. He said he knew they would not hire him if he mentioned the recent back injury, because he had seen it happen with other employees.
 

 Delatte said that he tried to deal with the pain on his own. But by March 19, 2007, he was experiencing increasing pain in his lower back and radiating pain down his right leg, so he decided to see a chiropractor, Phillip L. Smith. Delatte said he told Smith about the work accident and explained that the pain had been steadily increasing since December. However, the paperwork he completed at his first visit does not reflect an accident and indicates he had experienced his complaint for “days.” The first visit consisted of a consultation and x-rays, but no treatments. The next morning, Delatte was in extreme pain when he woke up, and could barely sit, walk, or stand. He returned to Smith, who immediately called an ambulance and sent him to the emergency room at St. Elizabeth Hospital. His right hip was x-rayed, and he was given pain medication. On Delatte’s next visit, Smith ordered an MRI. The MRI showed a problem with Delatte’s L4-5 disc, and Smith recommended he see a neurosurgeon.
 

 Delatte saw Dr. Corsten on April 10, 2007. Delatte said the doctor looked at his MRI, gave him a physical examination, and recommended physical therapy and a steroid shot. He also told him he should not return to work and prescribed a pain medication, Percocet. Delatte could not afford the treatments recommended by Dr. Cor-sten and Pala refused to pay for them, so he continued chiropractic treatments with Smith. Other than the first two visits to Dr. Holmes while he was working for Pala, he paid all of his medical bills out of his own resources, including obtaining a loan.
 

 Patrick Banks testified that he met De-latte when they were both working for Pala at the Motiva plant, and worked with him on several jobs. When |7Pelatte was injured, Banks was standing at the bottom of the scaffold on which he and the operator were working to free the stuck valve. Banks said that the way they had to use the valve handle opener, it had a lot of pressure on it. After they had tried several times, Delatte told Banks he was feeling discomfort in his back and asked him to help the operator open the valve. In response to a question from the court, Banks said, “I could just see the expression on his face [was] that something changed, like he hurt himself.” Banks could not open the valve either, due to the pressure. He and Delatte both gave statements about Delatte’s injury to the safety manager.
 

 Banks said he saw Delatte every day at work after the accident, and that he had
 
 *297
 
 “been complaining about his back ever since the incident.” Banks also testified that he could tell by Delatte’s facial expressions that he was always in pain while they worked, even though Delatte was on light duty and did not do anything strenuous. This condition continued until they were both laid off. He and Delatte were both hired by Jacobs at the same time to work a turnaround at ExxonMobil. That job lasted three to four weeks, and he saw Delatte every day. Again, Delatte always had a look of pain in his face, and Banks said he “could see he was just hurting. And he always would complain about it.” At Jacobs, there were a lot of workers working in one area, so Delatte did not have to do anything that might put a strain on his back. Banks also said that he would help him all the time. If Delatte had a problem with a procedure that was too strenuous for him, Banks and other people on the crew would help him. He said he seriously believed Delatte was hurt. They had not worked together since February 2007, and did not have much contact, except that Banks would call De-latte about once every other month to check on him.
 

 Delatte’s medical records support his description of the sequence of events following his accident. On his first visit to Smith, he reported that his major complaint of lower back pain on the right side was severe and constant, and that he had been experiencing this for “days.” Smith’s records show that |sDelatte had weekly chiropractic treatments for right low back pain and burning pain in his right leg. The pain would subside for a while, then flare up again, and, although his condition improved, it was never completely resolved.
 

 The St. Elizabeth Hospital records show that Delatte was brought to the emergency room by ambulance on March 20, 2007, with complaints of severe and constant pain in his right hip and leg. X-rays were taken and he was given an injection of pain medication, including morphine, phener-gan, toradol, and norflex. He was discharged with prescriptions for Percocet, Flexeril, and Motrin, and told to follow up with his personal physician.
 

 Dr. Corsten’s medical records include a summary of his findings after Delatte’s first visit on April 10, 2007, stating that he “has radicular symptoms due to a small herniated disc at L4-5. The patient has sensory loss in the L4 dermatome and he has what appears to be a foraminal disc rupture causing nerve root impingement on the right side.” In the history of present illness, Dr. Corsten noted that Delatte “states he has had these symptoms since December 2006 when he was injured at work by pulling on a lever while pipe fitting. He then went to a medical examiner at work, but the pain has since continued.” Dr. Corsten’s notes state that he “recommended a course of pelvic traction as well as a transforaminal epidural steroid injection at L4-5. Should these more conservative means not be successful, a hemi-laminectomy and discectomy is certainly an option.” He prescribed Percocet for pain. In a progress note on May 3, 2007, Dr. Corsten noted Delatte’s inability to work, along with a problem he was experiencing having his treatments approved under workers’ compensation. In August, the progress note states Delatte “is not able to work at this time due to the amount of pain that he is in, and it is likely that this focal disc herniation is related to the injury which he suffered at work when he describes pulling on a lever to loosen a valve, with immediate onset of symptoms of pain radiating into his right leg.” In his deposition, Dr. Corsten was asked whether his opinion that Delatte’s condition was caused by the workjrelated,, incident would change if he knew that Delatte had contin
 
 *298
 
 ued working for Jacobs and for DMI after the incident and had completed forms saying he had no recent injury and/or that his condition was not work related. Dr. Cor-sten said his opinion would not change, explaining:
 

 It sounds to me like he got laid off from his job. In order to get another job — I don’t think they would hire him as a pipefitter if he said that he had a herniated disc and was being treated for it. So they would have denied him work. So he said, [“]No, I don’t have any problems right now.[”] He just wanted a job to support himself and support his family. When that job didn’t work out, he made a similar decision with his other employer that-was he saying something dishonest, perhaps; but he was just trying to get gainful employment....
 

 ⅝ ⅜ ⅜
 

 But like you said, he went to see a chiropractor because he wanted somebody to help with the pain. It sounds to me like he was trying to avoid surgery on his back, which is a very common thing. Many patients don’t want to have surgery. Again, I don’t think that has bearing on the fact, in terms of truthfulness of what he told me, that an injury at work caused this disc to herniate. That is my opinion.
 

 Based on our review of the evidence, we find no error in the WCJ’s conclusion that Delatte proved that before the accident, he did not have any disabling symptoms and was able to perform his normal job duties as a pipefitter without any difficulty. He experienced lower back pain immediately while pulling on the lever at work and, although he continued to work for Pala and other employers, he self-limited his activities and continued to have significant back pain. He tried to deal with the pain on his own, hoping it would eventually subside, but it did not. Instead, it increased and began radiating down his right leg. There is no evidence of any intervening trauma that might have caused his continued lower back symptoms. An MRI taken on March 29, 2007, showed that at the L4-5 level, Delatte had “[m]ild asymmetric to the right disc bulging. Mild facet arthrosis. Severe right and moderate left neural foraminal narrowing.” Dr. Corsten indicated that he firmly believed Delatte’s back problem was causally related to the accident and that he should not continue to work in pain. Moreover, the WCJ found Delatte’s testimony was credible concerning his failure to disclose the injury to subsequent employers 11ftfor fear that he would not be hired. We find no error in the WCJ’s conclusion that Delatte met his burden of proof that the accident at work caused his lower back problems. The WCJ had considerable evidence to support that conclusion, and the record as a whole does not show that her decision was manifestly erroneous.
 

 TEMPORARY TOTAL DISABILITY BENEFITS
 

 Delatte seeks additional total temporary disability benefits from March 19, 2007, through May 2, 2007, claiming he was unable to work during that time period. This period corresponds to his first visit to the chiropractor and continues through the time when Dr. Corsten diagnosed him as unable to work due to pain.
 

 An employee seeking temporary total disability benefits (TTDs) in accordance with LSA-R.S. 23:1221(l)(c) must prove by clear and convincing evidence that he is physically unable to engage in any gainful occupation, whether or not the same type of work he was engaged in at the time of injury.
 
 Alexander v. Sanderson Farms. Inc.,
 
 08-2225 (La.App. 1st Cir.5/8/09), 17 So.3d 5, 10. Clear and convincing proof has been defined as an intermediate stan
 
 *299
 
 dard falling somewhere between the ordinary “preponderance of the evidence” civil standard and the “beyond reasonable doubt” criminal standard. Clear and convincing proof requires objective medical evidence of the disabling condition causing the employee’s inability to engage in any employment. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet this standard. The factual finding of whether a claimant is entitled to TTDs is subject to the manifest error or clearly wrong standard of appellate review.
 
 Roussell v. St. Tammany Parish Sch. Bd.,
 
 04-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 457-58,
 
 writ not considered,
 
 06-2362 (La.1/8/07), 948 So.2d 116.
 

 In his brief to this court, Delatte claims that on his first visit to his Inchiropractor on March 19, 2007, he was given an excuse not to return to work until March 27, and on March 28, he was given an excuse from work until April 5, 2007. However, Smith’s records do not include copies of these work excuses, nor do his records indicate that Delatte was unable to continue working due to his condition. Dr. Con-sten did not put him on work disability status until his second visit on May 3, 2007. There is no evidence that he was unable to engage in any gainful occupation for the period from March 19 through May 2, 2007. Therefore, we find no merit in Delatte’s request for additional TTDs.
 

 PENALTIES AND ATTORNEY FEES
 

 Delatte also seeks penalties and attorney fees for Pala’s failure to pay compensation and medical benefits. He argues that when he made his claim for benefits, Pala knew about his work-related injury and had no factual or medical basis to refuse his request.
 

 Louisiana Revised Statute 23:1201(F) covers situations where the employer fails to commence payment of compensation benefits timely, fails to pay continued installments timely, or fails to pay medical benefits timely.
 
 Roussell,
 
 943 So.2d at 461. An employer’s failure to authorize a necessary medical procedure is deemed to be a failure to furnish the benefits required by LSA-R.S. 23:1203, and the failure to authorize such treatment subjects the employer to the sanctions of LSA-R.S. 23:1201(F).
 
 Authement v. Shappert Eng’g,
 
 02-1631 (La.2/25/03), 840 So.2d 1181, 1186. Under the applicable statutory provisions of Subsection 1201(F), penalties and attorney fees are recoverable unless the claims are reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant.
 
 Brown v. Texas-LA Cartage. Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885, 890. The defendant must have some valid reason or evidence upon which |1gto base his denial or non-payment of benefits.
 
 Sharp v. St. Tammany Marine & Powersports,
 
 08-1992 (La.App. 1st Cir.9/10/09), 23 So.3d 347, 351-52. The employer or compensation insurer has a duty to investigate and make every reasonable effort to assemble and assess factual and medical information in order to ascertain whether the claim was compensable before denying benefits.
 
 Parfait v. Gulf Island Fabrication, Inc.,
 
 97-2104 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 25.
 

 The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong standard of review.
 
 James v. A & B Builders,
 
 09-0781 (La.App. 1st Cir.10/23/09), 29 So.3d 541, 546.
 

 
 *300
 
 The evidence shows that Pala knew that Delatte had injured his back while working on December 6, 2006, and that it paid for two visits to Dr. Holmes for that injury. Delatte continued working for Pala until he was laid off in mid-January 2007. Dr. Corsteh’s notes from Delatte’s April 10, 2007 visit indicate, “PN waiting to see if this will be a w/c case.” Pala filed an employer’s report of injury with the Office of Workers’ Compensation on April 23, 2007, showing that on December 6, 2006, Delatte “was assisting another [employee] with turning a [valve] handle when he complained of lower back pain.” Delatte’s personal calendar shows that he discussed his claim with a Zurich representative on April 26, 2007. Zurich requested medical records from Dr. Corsten on April 30, 2007. On May 3, 2007, Dr. Corsten’s progress note states, “Apparently, the patient is having some trouble with his workmen’s compensation in terms of getting his treatments approved.” Delatte testified that Pala never approved or paid for the medical treatments recommended by his doctors.
 

 Pala and Zurich presented no evidence that they made any investigation into De-latte’s medical condition before denying benefits; therefore, there was |lsnothing for the WO to consider and nothing in the record for this court to review. The record also does not show when Pala or Zurich received any of Delatte’s medical or work records. Considering the record as a whole, it is clear that Pala and Zurich were on notice that Delatte had suffered an on-the-job injury and that he and his doctor believed his continuing back problems were caused by that incident. They provided no evidence of their investigatory reasons for denying his claim. Therefore, the WCJ’s denial of penalties and attorney fees is manifest error.
 
 See Elswick v. Highway Transport,
 
 96-0014 (La.App. 1st Cir.9/27/96), 680 So.2d 1364, 1370.
 

 The penalty for each disputed claim shall be an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim. However, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
 
 See
 
 LSA-R.S. 23:1201(F) and 1201(F)(2). Because a penalty of $50 per day for the time period involved would exceed the statutory cap of $2000 for each claim, we will assess a penalty of $2000 for the failure to pay compensation and medical benefits. The judgment will be amended accordingly.
 

 Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section. LSA-R.S. 23:1201(J). When attorney fees are awarded in a workers’ compensation case, they are deemed to be a penalty, and the value of the attorney’s fees need not be proven.
 
 Insurance Co. of North America v. Labit,
 
 99-2448 and 2449 (La.App. 1st Cir.11/15/00), 772 So.2d 385, 389. Proof of the value of an attorney’s services is not necessary where the services are evident from the record and/or are rendered under the supervision of the court.
 
 Richard v. Broussard,
 
 482 So.2d 729, 734 (La.App. 1st Cir.1985),
 
 aff'd,
 
 495 So.2d 1291 (La.1986). The court is allowed to call upon its own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case.
 
 Bacon v. Transp. Serv. Co.,
 
 01-1913 (La.App. 1st Cir.10/2/02), 836 So.2d 158, 162.
 
 *301
 
 Factors to be considered in the imposition of reasonable attorney fees in workers’ compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case.
 
 Russell v. Regency Hosp. of Covington, LLC,
 
 08-0538 (La.App. 1st Cir.11/14/08), 998 So.2d 301, 306. On awards of penalties and attorney fees, legal interest is due from the date of judgment until paid.
 
 Sharbono v. Steve Lang & Son Loggers,
 
 97-0110 (La.7/1/97), 696 So.2d 1382, 1389.
 

 Delatte’s attorney litigated his claims through discovery, including Dr. Corsten’s deposition, and presented them clearly in-briefs and evidence submitted to the WO. However, the legal issues were not complex and the hearing before the WCJ included only the testimony of Delatte and Banks. The attorney was successful in obtaining compensation and medical benefits for Delatte. Based on these considerations, we will amend the WCJ’s judgment to award $1000 as reasonable attorney fees in this matter.
 

 CONCLUSION
 

 The judgment of February 10, 2009, is amended to order Pala and Zurich to pay $2000 in penalties and $1000 in attorney fees, plus interest on these amounts from the date of this judgment until paid. In all other respects, the WCJ’s judgment is affirmed.
 

 AMENDED AND AFFIRMED AS AMENDED.
 

 McDONALD, j., dissents on the award of attorney fees and would affirm the Workers’ Compensation Judges judgment in whole.