PARRO, J.
|2In this workers’ compensation case, Matthew Sharp appeals the amount of attorney fees, the denial of penalties, and the failure to assess interest and costs in a judgment awarding him $550 in attorney fees after finding his employer had underpaid compensation benefits by $143.46. We amend the judgment and affirm it as amended.
BACKGROUND
On December 3, 2005, Matthew Sharp was an eighteen-year-old college student working part-time for St. Tammany Marine & Powersports (St. Tammany) and was seriously injured when he fell during the repair of a roof damaged by Hurricane Katrina. St. Tammany’s insurer began paying compensation benefits on December 15, 2005, paid $121 per week for the first two weeks following his accident, and thereafter paid $105 per week through April 27, 2006.[1] It also paid medical benefits in the total amount of $41,100.80.
On January 17, 2007, Matthew filed a disputed claim for compensation, alleging that his wage compensation rate was incorrect, that vocational rehabilitation had been denied, and that he had not been provided with copies of his medical records. He sought additional compensation benefits, penalties, interest, and attorney fees. In November 2007, he amended his claim to allege that his wage compensation rate should have been $112.97 per week, that additional medical treatment, speech therapy, and prescriptions had been denied, and that payment of medical bills had been untimely. Pretrial mediation was ordered, but some of the issues were unresolved, and the case was submitted to the workers’ compensation judge (WCJ) for trial based on joint exhibits and stipulations and pre-trial briefs.
The only issues to be decided by the WCJ were whether St. Tammany should be assessed penalties and/or attorney fees. After reviewing the evidence, stipulations, and briefs, the WCJ noted that St. Tammany had miscalculated the employee’s wage compensation benefits, for a total underpayment of $143.46, and assessed $550 in |sattorney fees against St. Tammany. Stating that any other missteps regarding timely payment of medical benefits or failure to timely supply requested information were not done maliciously, arbitrarily, or capriciously, the WCJ denied all other claims for penalties and attorney fees. The issues in this appeal are whether penalties and additional attorney fees should have been assessed for underpay *351 ment of compensation benefits and for St. Tammany’s failure to timely provide copies of medical records and timely pay certain medical bills and mileage expenses, and whether the WCJ erred in failing to assess interest and costs.
APPLICABLE LAW
There are two statutes in Louisiana’s workers’ compensation laws that provide for penalties and/or attorney fees when an employer or its insurer has failed to handle payments of an employee’s claim properly. Louisiana Revised Statute 23:1201(F) provides for penalties and reasonable attorney fees for failure to pay compensation or medical benefits in accord with LSA-R.S. 23:1201. However, the provision does not apply if the claim is reasonably controverted or if the nonpayment results from conditions over which the employer or insurer had no control. LSA-R.S. 23:1201(F)(2). Louisiana Revised Statute 23:1201(1) authorizes the assessment of penalties and reasonable attorney fees when the employer or insurer discontinues payment of claims, when such discontinuance is found to be arbitrary, capricious, or without probable cause. Another statute under which penalties and attorney fees may be imposed is LSA-R.S. 23:1125, which allows a $250 penalty and reasonable attorney fees if the claimant is not timely provided with a copy of medical records of his treatment by the employer’s choice of health care provider. See LSA-R.S. 23:1125(C).
These statutes provide for the imposition of penalties and attorney fees to discourage indifference and undesirable conduct by employers and insurers and are essentially penal in nature. Although the workers’ compensation law is to be liberally construed with regard to benefits, penal statutes are to be strictly construed. Cooper v. St Tammany Parish Sch. Bd., 02-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, 04-0434 (La.4/23/04), 870 So.2d 300. The determination of |4whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the WCJ’s findings shall not be disturbed absent manifest error. Authement v. Shappert Eng’g, 02-1631 (La.2/25/03), 840 So.2d 1181, 1188—89; Hayes v. Louisiana State Penitentiary, 06-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 563, writ denied, 07-2258 (La.1/25/08), 973 So.2d 758. However, if legal error interdicts the fact-finding process, the manifest error standard no longer applies, and if the record is otherwise complete, an appellate court should make its own de novo review of the record. Evans v. Lungrin, 97-0541 and 97-0577 (La.2/6/98), 708 So.2d 731, 735; see also Bertrand v. Dow Chemical Co., 05-1246 (La.App. 1st Cir.12/20/06), 951 So.2d 263, 269, writ denied, 07-0098 (La.3/9/07), 949 So.2d 453.
DISCUSSION
Although the parties used the term “arbitrary and capricious” in their briefs to this court and the WCJ also used that terminology in his judgment, that standard is applicable only when the employer or its insurer discontinues payment of benefits. See LSA-R.S. 23:1201(1). There are no allegations in this case concerning discontinuance of benefit payments; therefore, the WCJ legally erred in using the arbitrary and capricious standard. See Brown, v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 889 and 891 n. 5. The correct standard to be applied when the claims involve denials or untimely payments of certain benefits is whether those claims were “reasonably controverted” by the employer and/or its insurer. See LSA-R.S. 23:1201(F)(2). To reasonably controvert a claim, the defendant must have some valid reason or evi *352 dence upon which to base his denial or non-payment of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, the court must ascertain whether the employer or its insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant. Brown, 721 So.2d at 890; see also Roussell v. St Tammany Parish Sch. Bd., 04-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 462, writ not considered, 06-2862 (La.1/8/07), 948 So.2d 116.
In light of the legal error by the WCJ, we must use the appropriate legal | r,standard set out in LSA-R.S. 23:1201(F) and make our own independent de novo review and assessment of the record with regard to the issues impacted by the application of that statutory provision to determine whether St. Tammany’s actions warrant the imposition of penalties and attorney fees. See Bertrand, 951 So.2d at 269. The assignment of error in this appeal lists four areas in which St. Tammany or its insurer is alleged to have handled Matthew’s claim improperly and for which penalties and attorney fees should be awarded. Those are: underpayment of compensation benefits based on a miscalculation of his average weekly wage, late payments of mileage and prescription expenses, late payment of medical bills, and refusal to supply a copy of his medical records prior to suit. We will address each of those claims in turn.

Compensation Benefits

According to LSA-R.S. 23:1021(12)(a)(iii), if the employee is paid on an hourly basis and the employee is a part-time employee, the average weekly wage is his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury. The record contains the following wage history for the week of Matthew’s accident and the weeks preceding it:
12/01/05-12/07/05 $133.13 (17.75 hours @ $7.50/hour) 11/24/05-11/30/05 Thanksgiving — did not work this week 11/17/05-11/23/05 $97.50 (13 hours @ $7.50/hour) 11/10/05-11/16/05 $105.00 (14 hours @ $7.50/hour) 11/03/05-11/09/05 $116.25 (15.5 hours @ $7.50/hour) 10/27/05-11/02/05 $116.25 (15.5 hours @ $7.50/hour)
Matthew was injured on Saturday, December 3, 2005, and was released to full employment on Friday, March 31, 2006. The first full week of work before the date of Matthew’s injury was November 17, 2005, through November 23, 2005. Based on a total of 58 hours, the average of his actual hours worked in the four full weeks preceding the date of injury was 14.5 hours, and his hourly wage rate was $7.50. Therefore, his average weekly wage should have been $108.75, not $112.97, as he claimed.
IfiKristin Shortess, the adjuster who handled Matthew’s claim for St. Tammany’s insurer, testified in her deposition that when she computed the average weekly wage, she obtained an amount that was below the applicable minimum. See LSA-R.S. 23:1202(A)(2) and (B). Therefore, she adjusted the payments to $105 per week, the amount she believed was the applicable minimum compensation at that time.[2] However, according to LSA-R.S. 23:1202(A)(2), in any case where the employee was receiving wages at a rate less than the applicable minimum compensation, the compensation is to be the employee’s “wages,” ie., his average weekly wage at the time of the accident. See LSA-R.S. 23:1021(12).
*353 The record shows that Matthew was paid $121 per week for the first two weeks and $105 per week for the remainder of the time, when his weekly payments should have been $108.75. Based on this payment history, Matthew’s compensation benefits after the first two weeks were underpaid. See LSA-R.S. 2S:1201(A) and (B). Since St. Tammany’s insurer does not dispute that the amount due to Matthew was miscalculated and he was underpaid the weekly benefits during most of the term of his disability, we find that St. Tammany did not reasonably controvert his claim for additional wage benefits. Therefore, pursuant to LSA-R.S. 23:1201(F), a penalty and reasonable attorney fee must be assessed for this claim.
The penalty for each disputed claim shall be an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. See LSA-R.S. 23:1201(F) and 1201(F)(2). Because a penalty of $50/day for the time period involved would exceed the statutory cap of $2000 for each claim, we will assess a penalty of $2000 for the underpayment of compensation benefits. The judgment -will be amended accordingly.
We note that the only issues before the WO at trial and before this court on 17appeal concern the awards of attorney fees and/or penalties. The judgment rendered by the WCJ did not order payment of the alleged underpayment of $143.46, but awarded $550 in attorney fees for this claim.[3] However, although LSA-R.S. 23:1201(F) states that reasonable attorney fees are mandatory for “each disputed claim” for which a violation of Section 1201 has been found, LSA-R.S. 23:1201(J) modifies that provision, stating in part:
Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section.
Therefore, instead of evaluating the reasonableness of the $550 award, we will make a single award of a reasonable attorney fee after considering the other claims under which such an award might be required by other provisions of Section 1201. See Russell v. Regency Hosp. of Covington, LLC, 08-0538 (La.App. 1st Cir.11/14/08), 998 So.2d 301, 306.

Mileage and Prescription Expenses

Louisiana Revised Statute 23:1201(E) requires that medical benefits are to be paid within sixty days after the employer or insurer receives written notice thereof. Failure to pay in accordance with this provision subjects the employer or its insurer to the penalties and attorney fees mandated by LSA-R.S. 23:1201(F).
On January 25, 2008, Matthew submitted a mileage reimbursement request for 390 miles traveled to various doctors’ appointments from October 2, 2007, through January 25, 2008. On February 25, 2008, he submitted a request for reimbursement of $44.09 for a prescription filled Novem *354 ber 5, 2007. On April 3, 2008, he resubmitted those requests, along with an additional request for a separate mileage reimbursement for 106.8 miles traveled. These submissions were not paid until April 16, 2008, when |sSt. Tammany’s insurer issued a check in the amount of $262.68 to cover both mileage requests and the prescription expense. Matthew does not dispute the amount of this payment, but claims that pursuant to LSA-R.S. 23:1201(F), he is entitled to penalties of $2000 for late payment of the mileage reimbursement, $2000 for late payment of the prescription expense, and reasonable attorney fees for each claim.
St. Tammany concedes that a “technical violation of the statute occurred” when its insurer failed to timely pay the mileage reimbursement request that was initially sent on January 25, 2008, but remained unpaid until April 16, 2008, following its re submission on April 3, 2008. St. Tammany did not offer any indication that it challenged or controverted this mileage request in any way. The only possible explanation for the delay in payment was Ms. Shortess’s deposition testimony that during this period, the insurance company was in transition to “paperless” documentation, and that occasionally, there were “glitches in the system” that may have delayed payment of some benefits. However, this was a condition over which the insurer had control. Accordingly, under the mandatory wording of the statute, a penalty is required.
The payment of $262.68 included $44.09 for the prescription expense; therefore, the amount paid to reimburse the total mileage of 496.8 miles was $218.59, a rate of 44 <t /mile. Accordingly, $171.60 was attributable to the 390 miles for which payment was 22 days past due. Assessing the greater of 12% of the past due amount or $50/day, the statutorily mandated penalty is $1100 for this claim.
Concerning the prescription expense of $44.09, we note that the time between its submission on February 25, 2008, and payment on April 16, 2008, is only 51 days. Therefore, this payment was within the sixty-day period specified by LSA-R.S. 23:1201(E), and no penalty or attorney fees are due with respect to this claim.

Medical Bills

Matthew contends that a number of medical bills were not paid within the statutory sixty-day time limit, as required by LSA-R.S. 23:1201(E). He seeks penalties and attorney fees for each of these claims.
|9The first claim involves three bills in the amounts of $197, $35, and $172 from Ochsner Clinic related to services provided on March 13, 2006; the first two bills were not paid until June 19 and the last was not paid until October 13, 2006. Ms. Shortess testified that the reason for the late payments was that the bills were sent on health insurance claim forms (HCFAs) without any accompanying medical records from which the insurer could determine whether the services were necessary or were related to Matthew’s injury. She stated that claimants may be receiving medical treatments for unrelated diseases or injuries, and without the explanatory information, the insurer cannot confirm that these bills are payable as workers’ compensation medical benefits. Therefore, when such unexplained HCFAs were received, the insurer requested medical records and paid the bills after those were provided, if those records confirmed the treatments were medically necessary and related to the work injury. We find, from our examination of the record, that the Ochsner Clinic bills in question were reasonably controverted, because when they *355 were initially received by the insurer, there was nothing explaining why the services associated with the bills were needed or showing the relationship to Matthew’s injury. The insurer did not ignore the invoices, but requested supporting medical records on two different occasions. As soon as that information was received and connected to the appropriate invoices, the bills were timely paid. Therefore, the penalty provision does not apply to this claim. Cf. Roussell, 943 So.2d at 462 (award of penalties and attorney fees affirmed when neither the employer nor insurer made any attempt to determine whether the medical bills were medically necessary and related to the work injury).
Another disputed medical bill was from Dr. Carl Lowder at the Ochsner Clinic, relating to treatment on January 30, 2006. This invoice was not paid until May 2006. Although Matthew’s brief to this court suggests the invoice was “issued” February 1, 2006, which corresponds with the date on the invoice, there is no evidence in the record to show when it was sent to the insurer. The only evidence in the record is a date-stamp in the left margin of the invoice, showing “REC 4/3/2006” and Ms. Shortess’s testimony that her records indicate that this invoice, with accompanying | inmedical records, was received on that date. She also testified, and the insurer’s payment record corroborates, that the check cleared May 9, 2006. This was well within the sixty-day period, and -we find the evidence does not show that a penalty was applicable to this claim.
Another invoice that was paid late was one concerning treatment at Lakeview Regional Medical Center on December 3, 2005, showing a total charge of $1,474. This invoice was sent directly to Matthew’s parents by Van Meter and Associates, which apparently was a billing services contractor handling Lakeview’s accounts. There was some confusion about when the invoice was received by the insurer, but again, the invoice was on an HCFA form with no accompanying medical records. The insurer asked Van Meter for medical record documentation to support the claim, and the response was that this information would have to be requested directly from the hospital. That was done on October 12, 2006, but the date-stamp on the medical records shows they were not received by the insurer until January 3, 2007. Ms. Shortess testified that as soon as she received the supporting documents, she put this invoice in line for payment “ASAP,” and it was paid February 8, 2007. We find that the bill was reasonably controverted, because it initially included no medical documentation explaining the services associated with the bill or relating it to Matthew’s injury, and was paid within sixty days after receipt of that information. Therefore no penalty is applicable to this claim.
Finally, an invoice in the amount of $3,225 from Dr. Bianchini summarized treatments provided February 15, 2006, through June 26, 2006. At the top of the invoice is the handwritten notation, “ *REPORT ATTACHED.” However, there is no datestamp on this invoice to show when it was received by the insurer, nor is there any other evidence in the record concerning when it might have been sent or received. The record does contain two additional invoices from Dr. Bianchini — one for $2,268 and the other for $957 summarizing the same treatments. These are date-stamped as received on “7/2/2007.” The insurer’s payment log shows the check to Dr. Bianchini for $3,225 cleared on “8/3/07.” As there is no evidence in the record to show that the ^insurer received the first invoice over sixty days before it was paid, we cannot assess penalties for this claim.

*356
Medical Records

The record shows that Matthew and his parents requested his entire file from St. Tammany’s insurer in September 2006. A memo from Ms. Shortess shows that she sent his medical records and a print-out of payments to him and his parents on January 24, 2007. Matthew claims a $250 penalty is due, pursuant to LSA-R.S. 23:1125, for the insurer’s failure to timely respond to his request for copies of his medical records.
We disagree. This penalty statute applies only if the claimant is not timely provided with medical records of his treatment by the employer’s choice of physician. See LSA-R.S. 23:1125(A) and (B). We find that Matthew was being treated by his choice of physicians. Therefore, this provision is inapplicable, and no penalty is due.

Attorney Fees

After reviewing all the claims in this proceeding, we have concluded that penalties and reasonable attorney fees must be awarded for the claims for underpayment of compensation benefits and untimely payment of mileage expenses. As previously noted, the WCJ awarded $550 in attorney fees for the underpayment of compensation benefits, but under LSA-R.S. 23:1201(J), this court may award only one reasonable attorney fee in connection with the hearing on the merits of the disputed claims. Factors to be considered in the imposition of reasonable attorney fees in workers’ compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Russell, 998 So.2d at 306.
Matthew’s attorney litigated these claims through discovery and mediation and presented them clearly in briefs and documents submitted to the WCJ. However, the pleadings were formulaic, the legal issues were not complex, the monetary amounts involved in the claims were nominal, the case was not orally presented to the WCJ at a hearing, and the results were inconsistent. Based on these considerations, we will amend the WCJ’s judgment to award $1200 as reasonable attorney fees in this matter.
| iJLegal Interest and Court Costs
Finally, Matthew claims the WCJ erred in failing to award him legal interest and court costs. With respect to whether legal interest is due, we note that the claims before us involve only penalties and attorney fees. On such awards, interest is due from the date of judgment until paid. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382, 1388-89. This court will amend the judgment to reflect such an award.
Under LSA-R.S. 23:1310.9, an award of the total costs of the proceedings is mandatory upon a finding that a compensation proceeding has not been brought on a reasonable ground or that denial of benefits has not been based on a reasonable ground. This court has concluded that St. Tammany did not reasonably controvert Matthew’s claims for underpayment of compensation benefits and untimely payment of certain mileage expenses. Therefore, the costs of this proceeding, including the costs of this appeal, must be assessed against St. Tammany. The judgment will be amended accordingly.
CONCLUSION
Based on the foregoing, the judgment of June 11, 2008, is amended to award Matthew Sharp $3100 in penalties and $1200 in attorney fees, plus legal interest from the date of judgment until paid, and all costs, including the costs of this appeal.
*357 AMENDED AND AFFIRMED AS AMENDED.
McCLENDON, J., concurs and assigns reasons.

. Matthew's treating physician had released him to heavy duty employment without restrictions on March 31, 2006. However, he continued to receive treatment and medication for problems with memory, focus, and attentiveness, which were related to the head injury.

. According to the Louisiana Workforce Commission, the actual minimum payment established by the administrator of the Louisiana Employment Security Law for the date of Matthew’s injury was $121 per week. See LSA-R.S. 23:1202(B); http//brgo.com/Dep(/ Parish Attorney/PDF/AvgWage_MinMax-Rates.pdf.

. The judgment stated:
IT IS ORDERED, AJUDGED (sic) AND DECREED that the employer, St. Tammany Marine & Powersports[,] miscalculated employee’s indemnity benefits for a total underpayment of $143.46. Consequently, the Court awards Matthew C. Sharp $550.00 in attorney fees against St. Tammany Marine and Powersports.