PETTIGREW, J.
12Pefendant, Terminix Pest Control, Inc. (“Terminix”) appeals a judgment of the Office of Workers’ Compensation (“OWC”) awarding claimant, Dean Chauvin, supplemental earnings benefits (“SEBs”) retroactive to December 31, 2009, the cost of a prescription medication, and penalties and attorney fees. For the reasons that follow, we affirm the judgment of the OWC.
FACTS AND PROCEDURAL HISTORY
Mr. Chauvin is employed by Terminix as a pest control technician. He is paid a commission on the accounts he services and also earns commissions on new accounts he brings in. Terminix’s pest control technicians perform “inside services” and “outside services.” Inside services require carrying a can and spraying pesticides inside the home or business of Ter-minix’s customers. Outside services require spraying pesticides outside the home or business of Terminix’s customers. To perform outside services, technicians are required to use a 3/8-inch, 100-foot hose attached to a reel on a Terminix truck to spray the pesticides.
On December 28, 2007, Mr. Chauvin, who was fifty-three years old at the time, slipped on a grate while performing pest control services on a barge and fell to the floor. He reported the incident to his supervisor a few days later. Terminix sent Mr. Chauvin to Dr. Larry Haydel for an evaluation. Mr. Chauvin visited Dr. Haydel from February through July 2008, complaining of back pain with radiation into his right leg following the work accident. Dr. Haydel diagnosed Mr. Chauvin as having a lumbar strain and sent Mr. Chauvin to have an MRI. The MRI showed a central disc protrusion at the L5-S1 level and degenerative disc disease.
Mr. Chauvin returned to work soon after the accident and performed both inside and outside services until April 10, 2008. For several months thereafter, Mr. Chau-vin did not return to work. In July 2008, Dr. Haydel released Mr. Chauvin to return to light duty work. For a short time, Terminix provided Mr. Chauvin with a driver and helper on the job.
Dr. Haydel referred Mr. Chauvin to Dr. Donald Gervais, a pain management | ^specialist. Dr. Gervais placed a 10 to 15-pound pulling and pushing restriction on Mr. Chauvin. On August 7, 2008, a functional capacity evaluation (“FCE”) was conducted by Trevor Bardarson, a physical *479 therapist, in which Mr. Bardarson placed a 10 to 15-pound lifting restriction on Mr. Chauvin and limited pushing and pulling to “occasional.” A 2009 ergonomic analysis by Mr. Bardarson measured the pull force required to move a large section of the 3/8-inch hose. The force to pull the hose averaged 20 pounds with a peak 30 pounds of pull; however, if the hose became jammed, a peak force of 50 pounds of pull force was measured.
Following Dr. Gervais’ restrictions on Mr. Chauvin’s pulling capabilities, Mr. Chauvin began to refuse all jobs requiring that he pull the hose from the reel of his truck. As a result, Mr. Chauvin’s income decreased, and Terminix’s workers’ compensation insurer, Stonestreet Commercial Insurance Company, paid SEBs to Mr. Chauvin through December 31, 2009, when it terminated benefits on the basis of a second FCE that concluded that Mr. Chauvin had the physical capability to pull the hose and thus perform outside services.
On March 3, 2010, Mr. Chauvin filed this disputed claim in the OWC seeking to recover SEBs and challenging the refusal to pay for Cialis[1] for erectile dysfunction (“ED”) and other prescription medications. He also sought to recover penalties and attorney fees. Mr. Chauvin claimed'that he is not capable of performing jobs requiring that he pull the hose from his truck in yards and around trees and buildings of Terminix’s customers because doing so exceeds the 10 to 15-pound force pulling limitations placed upon him by Dr. Gervais. He further asserted that because he can no longer perform the more profitable outside jobs, he is unable to earn more than 90 percent of his pre-injury wage. Terminix defended its decision to terminate benefits on the basis of the second FCE report, submitting that Mr. Chauvin is capable of performing all aspects of his job, and is not entitled to SEBs because any reduction in his income is not related to the job injury.
l/The four-day trial commenced on October 26, 2010, recessed, and concluded on January 19, 2011. At the outset, the parties stipulated that from January 2010 through the end of September 2010, during seven of the nine months in question, Mr. Chauvin earned less than 90 percent of his pre-injury wage and would be entitled to SEBs for those months in the amount of $5,716.97 if the court determined that such were due. The Workers’ Compensation Judge (“WCJ”) was presented with conflicting medical opinions, testimony from the two physical therapists that performed the FCEs, and medical records. The WCJ determined that Mr. Chauvin was entitled to SEBs from the date of the termination of benefits through the trial, but did not set forth an amount of the award in the judgment. The WCJ further determined that Terminix was not arbitrary and capricious in its decision to terminate SEBs. However, the WCJ found that Terminix was arbitrary and capricious in discontinuing Mr. Chauvin’s Cialis prescription and awarded $2,000.00 in penalties and $10,000.00 in attorney fees. A judgment was signed in accordance with these findings on February 7, 2011.
Terminix appealed, contesting the SEBs award, the award of Cialis, and the award of penalties and attorney fees. Observing that the judgment did not set forth an amount of SEBs, this court issued an interim order directing the WCJ *480 to determine the amount of SEBs owed by Terminix. On January 9, 2012, following a stipulation by the parties, the WCJ entered an award of SEBs in the amount of $8,475.00 with legal interest through the date of the trial.
SUPPLEMENTAL EARNINGS BENEFITS
Terminix contends on appeal that the WCJ applied the incorrect burden of proof on Mr. Chauvin’s SEBs claim. Terminix stresses that Mr. Chauvin’s entire case was based on his claim that he cannot perform outside jobs requiring the use of the hose and submits that the WCJ’s decision to award Mr. Chauvin SEBs based on Mr. Chauvin’s inability to perform one aspect of his pre-injury job is erroneous as a matter of law. In support of its position that the WCJ applied the wrong burden of proof, Terminix relies on Poissenot v. St. Bernard Parish Sheriffs Office, 2009-2793, pp. 4-5 (La.1/09/11), 56 So.3d 170, 174, wherein the supreme court set out the burdens of proof |sin a SEB case as follows:
An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage. It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee’s community or reasonable geographic location. [Citations omitted.]
In Poissenot,' the supreme court reversed a WCJ’s award of SEBs to the claimant upon finding that the claimant demonstrated that he could not perform the same type of work he was performing at the time of the accident. In so doing, the court stressed that the workers’ compensation statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed. Thus, the claimant had to prove by a preponderance of the evidence that he was unable to earn at least 90 percent of his average monthly wage because of his injury. The court held that the WCJ and appellate court erred in finding that the claimant met his initial burden of proof because they focused on whether the claimant could return to the same type of work he was performing before the accident, rather than whether the claimant could earn 90 percent of his pre-injury wages. Because the claimant did not meet his initial burden, the court concluded, the burden of proof never shifted to the employer. Pois-senot, 2009-2793 at 4-13, 56 So.3d at 174-179.
This case is clearly distinguishable from Poissenot. In Poissenot, a deputy sheriff employed at a juvenile center injured his finger and returned to work following the injury with accommodations, but was furloughed along with every other juvenile center employee as a result of Hurricane Katrina nearly a year later. He filed a claim with OWC seeking SEBs but offered very limited evidence on his ability to earn 90 percent of his pre-injury wage that focused on whether he could do the same *481 type of | fiwork or the same level of work he was doing before the injury. The trial court found that the employee met his burden of proving he could not earn more than 90 percent of his pre-injury wage because his former employer had made accommodations that no other sheriffs office would make. The supreme court found, however, that there was no medical evidence supporting the employee’s claim that he could not earn 90 percent of his pre-injury wage. Poissenot, 2009-2793 at 6-12, 56 So.3d at 175-178.
Here, Mr. Chauvin continued to work for the same employer following his work injury and continued to perform all aspects of his job as a pest control technician with the exception of those jobs requiring that he pull a hose from the reel in the back of his truck. Mr. Chauvin offered medical evidence supporting his claim that he is not capable of performing this aspect of his job. Moreover, the parties stipulated that for seven of the nine months in question, Mr. Chauvin earned less than 90 percent of his pre-injury wage. On the earnings issue, the evidence established that Terminix employees are paid commissions on the jobs they work and on new sales accounts they bring in, regardless of whether they perform the services, and earn cash awards for bringing in the most sales for a quarter. Mr. Chauvin testified that he is given approximately 200 account tickets for the routes he services and that during the period in question, he returned between 20 to 25 tickets each month requiring that he perform outside services. Mr. Chauvin testified that outside services generated more commissions and were among the highest paying jobs he performed prior to his injury.
Terminix’s general manager, Daniel Foster, testified that the economy did not affect the commissions earned by pest control technicians, stating that in general, the commission employees were doing at least as well or better than they had the previous year. According to Mr. Foster, each month over the nine-month period in question, Mr. Chauvin turned in 25 to 30 tickets, which he estimated to have a gross revenue of $1,200.00, on which Mr. Chau-vin could have earned $300.00 per month in commissions. Although there was no documentary evidence establishing the value of the outside jobs, the parties stipulated that for seven months Mr. Chauvin did not earn 90 percent of his pre-injury commissions, and the evidence showed that Mr. Chauvin | continued to service his inside accounts, worked a 40-hour work week, continued to earn commissions on accounts he sold, and continued to win awards for bringing in the most new accounts. The only difference in Mr. Chau-vin’s job performance was that he no longer serviced accounts requiring that he pull a hose. Under these circumstances, we find that Mr. Chauvin demonstrated that he was no longer earning 90 percent or more of his pre-injury commissions because he no longer performed outside services. Consequently, in order to determine whether Mr. Chauvin’s diminished earning capacity resulted from his on-the-job injury, the WCJ necessarily had to make a factual determination as to whether Mr. Chauvin is capable of performing the outside service jobs that Mr. Chauvin turned down and for which he would have earned income. Accordingly, we find no error in the WCJ’s focus on Mr. Chauvin’s capability to perform outside services in determining whether he met his burden of proving that he could not earn more than 90 percent of his pre-injury wages as a result of his work accident.
In reviewing the WCJ’s factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the manifest error stan-
*482 dard of review. Polkey v. Landworks, Inc., 2010-0718, p. 3 (La.App. 1 Cir. 10/29/10), 68 So.3d 540, 544. Under that standard, this court may only reverse a WCJ’s factual determination if we find from the record that a reasonable factual basis for the finding does not exist and the finding is manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Polkey, 2010-0718 at 4, 68 So.3d at 545. In reviewing the factual findings of the court, we do not retry the case, we do not make credibility decisions, we do not make conclusions and draw inferences from the factual and credibility determinations. That is the role of the trial court.
IsTerminix contends that the evidence showed that Mr. Chauvin is capable of performing jobs requiring the use of the hose, relying principally on the two FCE reports it insists demonstrates that Mr. Chauvin could perform the jobs he was voluntarily refusing to do. Terminix urges that the only evidence offered to support Mr. Chauvin’s contention that he could not pull the hose was the testimony of Dr. Gervais, which Terminix claims was questionable because the doctor formed his opinion on the basis of Mr. Chauvin’s subjective claims of pain. Mr. Chauvin counters that Dr. Gervais unequivocally stated that Mr. Chauvin put himself at risk of further injury if he pulled on a hose with more than 15 to 20 pounds of pressure and that the WCJ simply chose to accept Dr. Gervais’ testimony in awarding Mr. Chau-vin SEBs.
We agree that the evidence on the issue of Mr. Chauvin’s ability to perform outside services requiring that he pull a hose from the reel of the truck was conflicting. Dr. Gervais, who treated Mr. Chauvin from July 2008 through the date of the trial, imposed pulling restrictions of 10 to 15 pounds on Mr. Chauvin. Dr. Gervais was asked on two occasions whether his opinion regarding Mr. Chauvin’s abilities changed as a result of the two FCE tests commissioned by Terminix. Dr. Gervais remained steadfast in his opinion regarding Mr. Chauvin’s pulling limitations and discounted the conclusions by the physical therapist conducting the second FCE. Terminix offered the testimony of the two physical therapists who performed the FCEs, both of whom concluded that pulling the hose is within Mr. Chauvin’s capabilities with the recommendations they suggested. Terminix also offered the deposition testimony of a physician who changed his original opinion regarding Mr. Chauvin’s limitations after reading the results of the second FCE.
The record reflects that Mr. Bardarson, who conducted the first FCE on August 7, 2008, concluded that Mr. Chauvin could return to his job as a pest control technician with a 10 to 15-pound lifting limitation and an occasional limitation on pulling and pushing. On March 20, 2009, at Ter-minix’s request, Mr. Bardarson prepared an ergonomic analysis to test the pull force of the hose under different circumstances, such as the force needed to pull it from the reel, around the yard, and the force | ¡¡generated if the hose encountered an obstacle. Mr. Bardarson used a force gauge to measure the pull force required to move a large section of the 3/8-inch hose and pulled the rope around a pole to simulate the resistance of moving the hose around a *483 house. The force to pull the hose averaged 20 pounds with a peak of 30 pounds of pull force. If the hose became jammed, a peak force of 50 pounds of pull force was measured. Mr. Bardarson stated that when pushing or pulling, a person is able to use body weight to their advantage; thus, when a person leans on an object, he will exert 20 percent of his body weight, making pushing a pulling a much easier activity than lifting when comparing forces. He observed that a person weighing 200 pounds could exert 40 pounds of force simply by leaning on the object.
Mr. Bardarson measured a peak force of 20 pounds to turn the reel and suggested the use of an electric reel to retrieve the hose, which Terminix did install on Mr. Chauvin’s truck. Mr. Bardarson opined that in light of the FCE he conducted earlier, Mr. Chauvin should be able to perform job duties requiring that he pull the hose with the ergonomic modifications he recommended.
On June 12, 2009, Dr. Gervais was asked by Mr. Chauvin’s attorney to review Mr. Bardarson’s ergonomic analysis- and respond to a number of questions. Dr. Ger-vais stated that pulling a hose requiring 30 pounds of pull exceeded Mr. Chauvin’s restrictions of 10 to 15 pounds set by him. He also answered “yes” when questioned whether, if the hose became jammed while Mr. Chauvin was pulling it, causing 50 pounds of force, Mr. Chauvin could be injured and should avoid this situation. Dr. Gervais further opined that even if Mr. Chauvin used his body weight to pull a hose requiring 30 pounds of pull force, such activity would cause forces to be exerted in Mr. Chauvin’s spine that are in excess of what he recommended.
During his August 4, 2009 deposition, Dr. Gervais reiterated that he restricted Mr. Chauvin to a 10 to 15-pound pull force and that the use of the hose above those pull forces presents a danger of exacerbating Mr. Chauvin’s condition, particularly if the hose became jammed, causing Mr. Chauvin to encounter 50 pounds of pull force. Dr. Gervais stated that Mr. Chau-vin could occasionally use a hose on Termi-nix jobs if such |inuse resulted in less than 10 to 15 pounds of force. Dr. Gervais stated that it was the combination of force and movement that presented problems for Mr. Chauvin, which accounted for the low pulling weight restrictions he placed on Mr. Chauvin. He also took issue with Mr. Bardarson’s conclusion that Mr. Chau-vin could use his weight to his advantage in generating greater pull force. He testified that the mechanical advantage Mr. Bardarson used to get the extra 40 pounds of pull force based on Mr. Chauvin’s weight would only apply to an uninjured person with a good back. In Mr. Chau-vin’s case, Dr. Gervais stated, the use of his back to obtain such mechanical leverage would only exacerbate Mr. Chauvin’s present condition.
Terminix’s workers’ compensation carrier sent Mr. Chauvin to obtain independent medical evaluations. Mr. Chauvin saw Dr. Todd Cowen, a specialist in physical medicine rehabilitation, on October 1, 2009. Dr. Cowen reviewed Mr. Chauvin’s medical records and diagnosed Mr. Chauvin as having right leg pain and low back pain. He noted that there was no objective evidence in any of the tests as to the cause of Mr. Chauvin’s symptoms and also noted that there were no objective findings on examination. Dr. Cowen admitted that Mr. Chauvin’s work status was very difficult to predict and stated that unless there was some fundamental improvement of Mr. Chauvin’s symptoms or another FCE were to be performed in the future, he would have to fall back on the restrictions set forth in the first FCE.
*484 On October 26, 2009, Mr. Chauvin was evaluated by Dr. Michael A. Puente, who reviewed Mr. Chauvin’s medical history and test results and conducted a complete neurologic examination. Dr. Puente noted and agreed with the FCE report imposing a 10 to 15-pound lifting restriction on Mr. Chauvin. Dr. Puente concluded that if the force needed to pull the hose is greater than 15 pounds, that would be outside of Mr. Chauvin’s physical capabilities and that Mr. Chauvin could return to his full duty as a pest control technician with the only exception being no pulling on the hose.
On January 19, 2010, Dr. Richard Bunch, a physical therapist who has a doctorate in physiology, performed a second FCE on Mr. Chauvin. Dr. Bunch performed a test to determine Mr. Chauvin’s material handling and functional strength capabilities, |nrecording a maximum isometric pull force of 72.5 pounds and an isometric push force of 74.7 pounds. The test noted a “5/10” pain rating while performing the push/pull section of the test. Dr. Bunch concluded that Mr. Chauvin has the physical capacity to perform all aspects of the job of a pest control technician and can safely pull out the 100-foot spray hose using the simple technique to advance the hose in order to avoid turn point restrictions. Dr. Bunch further stated that he was unable to estimate Mr. Chauvin’s physical demand capacity because Mr. Chauvin exhibited pain-limiting behaviors during the test that were not physiological in nature.
By letter dated February 12, 2010, Mr. Chauvin was informed that his SEBs were being terminated beginning January 2010 based on Dr. Bunch’s FCE determination that Mr. Chauvin has sufficient muscle strength to pull a 100-foot spray hose from the reel of his truck and is physically able to return to the current physical demands of his job as a pest control technician.
In March 2010, Terminix’s medical case manager sent Dr. Gervais a series of questions and had a conference with Dr. Ger-vais to discuss Dr. Gervais’ restrictions in light of Dr. Bunch’s FCE report. Dr. Gervais expressed his disagreement with Dr. Bunch’s FCE, believing that Mr. Chauvin could not give full effort due to pain and finding the conclusions in the report to have questionable significance. Dr. Gervais continued to restrict Mr. Chauvin from pulling forces greater than 15 to 20 pounds and expressed his opinion that Mr. Chauvin could not do his job if the use of the hose is critical.
Shortly before the start of trial, on October 22, 2010, Terminix took the deposition of Dr. Cowen. Therein, Dr. Cowen testified that based on his review of Dr. Bunch’s FCE, he believes that pulling the 3/8-inch hose is within Mr. Chauvin’s physical capabilities and that Mr. Chauvin did not put himself at greater physical risk by engaging in this activity. He disagreed with Dr. Gervais’ opinion that Mr. Chauvin should not pull or exert any force greater than 10 to 15 pounds, stating that such opinion was contradicted by the most recent FCE measuring Mr. Chauvin’s pull force of 72 pounds.
| i2Having thoroughly reviewed the record, we find that the WCJ’s determination that Mr. Chauvin is entitled to SEBs is reasonably supported therein. The WCJ obviously chose to accept Mr. Chauvin’s long-term treating physician’s opinion over that of two physical therapists and a doctor who examined Mr. Chauvin on one occasion and changed his opinion shortly before the trial. The WCJ’s decision to credit Dr. Gervais’ testimony over Terminix’s witnesses is not manifestly erroneous. Therefore, we may not disturb the award of SEBs.
*485 AWARD OF CIALIS, PENALTIES, AND ATTORNEY FEES
In its next two assignments of error, Terminix contends that the WCJ erred in requiring it to pay for Mr. Chauvin’s Cialis medication, prescribed for ED, and in awarding penalties and attorney fees for Terminix’s refusal to continue to pay for Mr. Chauvin’s Cialis prescription. Both of these assignments are based on the factual findings of the trial court.
A workers’ compensation claimant must prove the chain of causation required by the workers’ compensation statutory scheme. Champagne v. Roclan Systems, Inc., 2006-1928, p. 4 (La.App. 1 Cir. 2/20/08), 984 So.2d 808, 814, writ denied, 2008-1356 (La.9/26/08), 992 So.2d 989. A worker who suffers from a pre-existing medical injury may meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the pre-existing injury to produce an injury resulting in a compensable disability. Id. 2006-1928 at 5, 984 So.2d at 814. Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Harrison v. Baldwin Motors, 2003-2682, p. 5 (La.App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 2005-0249 (La.4/1/05), 897 So.2d 609.
Dr. Gervais was consistent in his testimony both at trial and in his deposition that he attributed the exacerbation of Mr. Chauvin’s ED to medications that he (Dr. Gervais) was giving to Mr. Chauvin for his injury. In his deposition, Dr. Ger-vais stated, “I’m not saying his injury at work or his current back problems was causing his [ED] but its presence because of the medications I was using made it more prominent, made it more severe.” Based on our review of the record before us, we are satisfied that Mr, | ,aChauvin met his burden of proof on causation with regard to the Cialis prescription and find no manifest error in the WCJ’s award concerning same.
Louisiana Revised Statutes 23:1201(1) authorizes the assessment of penalties and reasonable attorney fees when the employer or insurer discontinues payment of claims, when such discontinuance is found to be arbitrary, capricious, or without probable cause. This statute provides for the imposition of penalties and attorney fees to discourage indifference and undesirable conduct by employers and insurers and is essentially penal in nature. Although the workers’ compensation law is to be liberally construed with regard to benefits, penal statutes are to be strictly construed. Cooper v. St. Tammany Parish School Bd., 2002-2433, pp. 9-10 (La.App. 1 Cir. 11/7/03), 862 So.2d 1001, 1009, writ denied, 2004-0434 (La.4/23/04), 870 So.2d 300. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the WCJ’s findings shall not be disturbed absent manifest error. Sharp v. St. Tammany Marine & Powersports, 2008-1992, pp. 3-4 (La.App. 1 Cir. 9/10/09), 23 So.3d 347, 351. Following a thorough review of the record before us, we find no manifest error in either the WCJ’s determination that Terminix was arbitrary and capricious in discontinuing Mr. Chauvin’s Cialis prescription or in its award of penalties and attorney fees to Mr. Chauvin.[2]
*486 CONCLUSION
For the above and foregoing reasons, we affirm the February 7, 2011 judgment of the OWC, as amended January 9, 2012, by the WCJ. All costs associated with this appeal are assessed against defendant-appellant, Terminix Pest Control, Inc.
AFFIRMED.
KUHN, J., concurs & assigns reasons.
WELCH, J., agrees in part and dissents in part and assigns reasons.
McCLENDON, J., agrees in part and dissents in part for the reasons assigned by Judge WELCH.
HIGGINBOTHAM, J., concurs for reasons assigned by Judge KUHN.
KUHN, J., concurring.
|,In setting forth the applicable standard of review, the majority opinion clearly states that this Court, in reviewing the factual findings of the lower court, should not retry the case, make credibility determinations, or make factual conclusions or draw inferences from factual and credibility determination because to do so is the role of the trial court — here the Office of Workers’ Compensation (OWC).
Notwithstanding this legally correct statement of the standard of review, the dissenters would have this Court retry this case on appeal and substitute their own conclusion as to whether Mr. Chauvin’s work injury aggravated his pre-existing ED condition for that of the factfinder. Courts of appeal review but do not retry cases. I concur for the express purpose of rejecting the dissenters’ approach, which ignores the respective role of the trial court (here the OWC) versus that of the court of appeal.

. The record reflects that Terminix approved of Mr. Chauvin’s Cialis prescription on a short-term basis after receiving a letter of medical necessity from Dr. Gervais. However, on August 10, 2010, Terminix declined to pay the cost of the Cialis prescription and refused to cover the cost thereafter.

. Although Mr. Chauvin has requested an additional award of attorney fees for efforts performed in relation to this appeal, Mr. Chauvin has neither appealed nor answered the appeal in this matter. Accordingly, this relief may not be granted. La.Code Civ. P. art. 2133; Brown v. Kwok Wong, 2001-2525, p. 11 n.5 (La.App. 1 Cir. 12/20/02), 836 So.2d 315, 322 n. 5.