STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1614

DONNA BELL

VERSUS

SGS PETROLEUM SERVICE CORP.

*Judgment Rendered:*  DEC 1 0 2020

* * * * * * * *

Appealed from
The Office of Workers' Compensation
District 5, Parish of East Baton Rouge
State of Louisiana
Case No. 17-07035

The Honorable Pamela A. Moses-Laramore, Judge Presiding

* * * * * * * *

Phillip E. Foco                     Counsel for Defendant/Appellant
Patrick H. Hunt                     SGS Petroleum Service Corp.
Colin P. O'Rourke
Baton Rouge, Louisiana


Ted Williams                        Counsel for Plaintiff/Appellee
Baton Rouge, Louisiana              Donna Bell

* * * * * * * *

BEFORE: HIGGINBOTHAM, THERIOT, AND WOLFE, JJ.

**THERIOT, J.**

In this workers' compensation case, the employer appealed a judgment in favor of the claimant, awarding supplemental earnings benefits, as well as penalties and attorney fees. We affirm.

## FACTS AND PROCEDURAL HISTORY

Claimant, Donna Bell, was employed for approximately twenty-seven years by SGS Petroleum Service Corporation ("SGS") and its predecessor in interest, Hebert Brothers,[1] as a warehouse technician. In this position, Bell worked on an automated production line where machines filled fifty-pound bags with plastic pellets, sealed and labeled the bags, and placed the bags in boxes. Although the job description states that a large part of the employee's time is spent sweeping up pellets that fall to the floor as a result of the packaging process, the position requires the ability to lift up to fifty pounds of force frequently, or up to twenty pounds of force constantly, as well as the ability to push, pull, and lift grasp. Prior to the accident at issue herein, Bell had no physical restrictions or limitations and had no problems performing her job.

On August 15, 2015, Bell slipped and fell on packaging pellets in the course and scope of her employment. She braced her fall with her hands, resulting in fractures to both wrists. Bell did not immediately realize that her wrists were broken, so she put ice on them and finished the last few hours of her night shift. After returning home and going to sleep, Bell woke up in pain and discovered that her hands were very swollen and tight. Bell's husband brought her to the hospital emergency department, where she was diagnosed with a distal radius fracture in both wrists. Bell's wrists were splinted, and she was instructed to follow up with her physician for a referral to an orthopedist, which she did. Bell underwent a bilateral distal radius fracture open reduction and internal fixation surgery with Dr.

---

[1] SGS Petroleum Service Corporation hired Bell on July 7, 2008. Bell was employed by Hebert Bros. in the same position from 1988 through July 7, 2008.

2

Arthur Hess, an orthopedic surgeon, on August 25, 2015. Following the surgery, Bell continued to treat with Dr. Hess for a little over a year before reaching maximum medical improvement. She also received physical therapy for "Work Hardening per job description, strengthening, [and] conditioning," and was treated with dynamic splinting in an effort to increase mobility in her wrists. Although Bell saw some improvement with physical therapy and dynamic splinting, her wrists did not return to pre-accident condition, and she continued to have problems with her wrists, including "[s]tiffness, a lot of pain, locking up, not being able to grip, pick up stuff."

Bell never returned to work following her August 15 accident. It is undisputed that modified duty employment was not available with SGS, and her employment with SGS was terminated on July 5, 2016, due to her inability to perform the requirements of the position. SGS did not offer vocational rehabilitation counseling to Bell. Although she has made numerous attempts to obtain other employment on her own, she has not received any interviews or job offers.

Bell received Temporary Total Disability Benefits from September 6, 2015 through November 19, 2016, based on her average weekly wage of $738.92. A Functional Capacity Evaluation ("FCE") was performed at Peak Performance Physical Therapy by Benjamin D. Wilson, PT, DPT, on September 1, 2016. Based on the results of the valid FCE,[2] Wilson stated that Bell is restricted to lifting forty pounds and noted that her pre-injury job requires her to be able to lift up to fifty pounds. He concluded that Bell was able to perform 87.9% of the physical demands of her prior position.

---

[2] The FCE Summary lists the validity criteria as "Very Good (92.9%)."

Dr. Hess saw Bell again for a follow-up on September 7, 2016. He noted that she had completed her last session of physical therapy and had "some testing" done there less than a week before. Dr. Hess had not reviewed a copy of the FCE at the time of this visit. He noted that although her post-operative course had been complicated by stiffness in her wrists and forearms that has required extensive therapy and dynamic splinting, she has gained significant improvement with regard to her range of motion in her fingers, wrists, and forearms and has achieved maximum medical improvement. Dr. Hess opined that, from his perspective, "there are no limitations with regard to her activity, nor range of motion." Dr. Hess did not mention any lifting restrictions Bell may have, nor the job requirements of her former position.

Following this report from Dr. Hess, indicating that Bell had reached maximum medical improvement and had "no limitations," Bell's indemnity benefits were terminated. Bell eventually obtained legal counsel, and on October 18, 2017, counsel for Bell contacted the workers' compensation claims adjuster to request that her indemnity benefits be reinstated, since she remained unable to perform the requirements of the position due to her injury. At this time, Bell's counsel did not have a copy of the FCE and stated that Bell was not aware of the results of that exam. Bell's indemnity benefits were not reinstated following this request, and on November 1, 2017, a Disputed Claim for Compensation was filed. In addition to her claim of entitlement to indemnity and medical benefits, Bell also sought penalties, attorney fees, costs, and judicial interest. On November 21, 2017, after receiving a copy of the FCE, counsel for Bell again requested reinstatement based on the results of Bell's FCE and the SGS job description, but no reinstatement occurred.

Dr. Hess's deposition was taken on November 19, 2018. In his deposition, Dr. Hess explained his September 2016 statement that Bell had no limitations with

4

regard to her activity. Dr. Hess testified that what he meant was that he was not placing any limitations on what Bell could do at that point, because it would not do any additional damage to her extremities; rather, Bell is only limited by pain or her actual physical capabilities or limitations in her functioning. Dr. Hess explained that a patient's capabilities are addressed in the FCE. After viewing the FCE, Dr. Hess testified that Bell has documented limited capabilities related to her August 15, 2015 on-the-job injury that prevent her from performing the requirements of the warehouse technician position without modification. Thereafter, on November 26, 2018, counsel for Bell requested that SGS instate supplemental earnings benefits ("SEB") retroactive to November 12, 2016 and continuing, based on a wage-earning capacity of $0.00, based on Dr. Hess's deposition testimony that Bell remained incapable of meeting the requirements of her position as a result of her on-the-job injury. No SEB were paid.

The deposition of Benjamin Wilson, the physical therapist who performed the FCE, was taken on December 20, 2018. In his deposition, Wilson, who did not have an independent recollection of the exam, testified that his notes state that Bell put forth full effort throughout the exam, although her subjective pain complaints were unreliable based on the fact that non-subjective indicators of pain (heart rate, blood pressure) did not indicate an increased level of pain with increased effort. Nevertheless, Wilson testified that he did not determine that Bell was malingering and that there were other plausible explanations for the fact that her heart rate and blood pressure did not change with increased effort. Wilson testified that he based the functional results of the FCE on what Bell was actually able to physically do during the test, but he was not able to determine exactly what prevented her from doing more, i.e., whether it was lack of strength, limited range of motion, or pain, and his notes did not document why testing stopped at certain points. However, Wilson testified that the fact that he recommended additional work conditioning

5

indicates that he thought that if Bell could get a little bit stronger, she might be able to get to the point where she could meet the fifty-pound job requirement. Wilson ultimately confirmed that, based on the results of the FCE, Bell was incapable of performing her prior job according to the provided job description. On January 2, 2019, following Wilson's deposition, a final, unsuccessful request for benefits was made.

A trial was held on March 21, 2019. Following the trial, the Workers' Compensation Judge ("WCJ") found that Bell sustained bilateral wrist injuries that resulted in restrictions to her ability to work, which prevent her from returning to her former job. The WCJ found that Bell is incapable of earning ninety percent of her pre-injury wage, and thus is entitled to SEB. The WCJ also concluded that the continued denial of indemnity benefits to Bell was arbitrary and capricious. In a judgment signed April 1, 2019, the WCJ ordered SGS to pay Bell SEB from November 20, 2016 to March 18, 2019, in the total amount of $59,605.81, and to pay Bell SEB from March 19, 2019 and continuing, in weekly periodic installments of $492.61. The WCJ also awarded a $2,000.00 penalty and $10,000.00 attorney fee, plus costs.[3]

SGS appealed, arguing that the WCJ erred in finding that Bell is entitled to SEB because there is no proof that she has physical restrictions, as well as in finding that Bell is entitled to penalties and attorney fees because the claim was reasonably controverted.

## DISCUSSION

In reviewing a WCJ's factual determinations, including whether the employee has discharged her burden of proof, this court is bound by the manifest error standard of review. *Polkey v. Landworks, Inc.*, 2010-0718, p. 3 (La.App. 1 Cir. 10/29/10), 68 So.3d 540, 544. Under that standard, this court may only

---

[3] Although the WCJ stated that it was awarding vocational rehabilitation services, to begin as soon as possible, this was not included in the April 1, 2019 judgment.

reverse a WCJ's factual determination if we find from the record that a reasonable factual basis for the finding does not exist and the finding is manifestly erroneous. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 883. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. *Polkey*, 2010-0718 at p. 4, 68 So.3d at 545. In reviewing the factual findings of the court, we do not retry the case, we do not make credibility decisions, and we do not make conclusions and draw inferences from the factual and credibility determinations. That is the role of the trial court. *Chauvin v. Terminix Pest Control, Inc.*, 2011-1006, p. 7 (La.App. 1 Cir. 6/28/12), 97 So.3d 476, 482.

Louisiana Revised Statutes 23:1221(3)(a)(i) provides that SEB are payable for an injury resulting in the employee's inability to earn wages equal to ninety percent or more of the employee's wages at the time of the injury. The purpose of SEB is to compensate the injured employee for the wage-earning capacity she has lost as a result of her accident. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 8 (La. 7/1/97), 696 So.2d 551, 556. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the on-the-job injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. *Id.* In determining if an injured employee has made out a prima facie case of entitlement to SEB, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage. *Daigle v. Sherwin–Williams Co.*, 545 So.2d 1005, 1007 (La. 1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d 1037,

7

1039 (La.App. 3 Cir. 1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in the employer's or the employee's community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Chauvin,* 2011-1006 at p. 5, 97 So.3d at 480.

This analysis is necessarily a facts-and-circumstances one, in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. *Daigle,* 545 So.2d at 1007. There is ample record evidence that Bell is unable to perform her pre-injury job and that she has been unable to secure any other employment, constituting a reasonable factual basis for the WCJ's conclusion that Bell made a prima facie case of entitlement to SEB. Further, based on the evidence in the record, we do not find manifest error in the trial court's conclusion that SGS failed to carry its burden of proving that Bell was physically capable of performing a job that was available to her. This assignment of error is without merit.

SGS next contends that the WCJ erred in awarding penalties and attorney fees for the arbitrary and capricious denial of indemnity benefits to Bell because the claim was reasonably controverted.

Louisiana Revised Statutes 23:1201(I) authorizes the assessment of penalties and reasonable attorney fees when the employer or insurer discontinues payment of claims, when such discontinuance is found to be arbitrary, capricious, or without probable cause. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. The crucial inquiry is whether the employer has an articulated and objective reason for discontinuing benefits at

the time it took that action. *Lewis v. Temple Inland*, 2011-0729, pp. 6-7 (La.App. 1 Cir. 11/9/11), 80 So. 3d 52, 58.

The purpose of this provision is to discourage indifference and undesirable conduct by employers and insurers; hence, it is essentially penal in nature. Although the workers' compensation law is to be liberally construed with regard to benefits, penal statutes are to be strictly construed. *Cooper v. St. Tammany Parish School Board*, 2002-2433, pp. 9-10 (La.App. 1 Cir. 11/7/03), 862 So.2d 1001, 1009, *writ denied*, 2004-0434 (La. 4/23/04), 870 So.2d 300. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the WCJ's findings shall not be disturbed absent manifest error. *Sharp v. St. Tammany Marine & Powersports*, 2008–1992, pp. 3-4 (La.App. 1 Cir. 9/10/09), 23 So.3d 347, 351.

Although the trial court conceded that Dr. Hess's September 2016 statement that there were no limitations on Bell's activities could reasonably have been interpreted by SGS as a vague release to return to work, once the FCE was received, containing a forty-pound lifting limit, and Dr. Hess clarified his prior statements in his deposition, the failure to instate SEB was arbitrary and capricious. Although SGS claims that the FCE and Wilson's deposition raised some doubts as to Bell's actual limitations, the WCJ found Bell to be a more credible witness than Wilson and concluded that "the defendant cherry-picked the physical therapist's deposition to attempt to continue to deny indemnity benefits to Ms. Bell, and that that is arbitrary and capricious." Following a thorough review of the record before us, we find no manifest error in the WCJ's conclusion that the failure to pay SEB was arbitrary and capricious. This assignment of error is also without merit.

9

**DECREE**

For the reasons set forth herein, the April 1, 2019 judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are to be borne by the defendant, SGS Petroleum Service Corporation.

**AFFIRMED.**